---

## EX PARTE SWAN.

1. In ejectment, at common law, the death of the lessor of the plaintiff did not abate the suit, but it might be continued in the name of the nominal plaintiff, for the recovery of the land and nominal damages; and where the action for mesne profits was commenced in the name of the nominal

plaintiff, as it might be, the suit would be unaffected by the death of any party in interest on the part of the plaintiff.

2. But by our statute, (Clay's Digest 320 § 46,) a judgment for damages can only be rendered in favor of the real plaintiff, and if he dies pending the suit, a judgment for damages in favor of the nominal plaintiff is void.

3. In ejectment in this State, where damages are sought as well as the land, if the lessor of the plaintiff dies pending the suit, it must be revived in the names of his heirs at law and personal representative.

PETITION for a *mandamus* to the Circuit Court of Benton, commanding said court to vacate a certain judgment rendered at the Fall term, 1852, Hon. Thos. A. Walker presiding.

It appears from the record attached to the petition, that Eli M. Driver commenced an action of ejectment in said court, against one Alexander as tenant in possession, for the recovery of certain lands. The petitioner, William G. Swan, was permitted to defend as landlord of said Alexander, and the cause seems to have afterwards proceeded under the style and title of Doe *ex dem.* Driver v. Swan & Alexander.

At the trial of said cause, the defendants suggested the death of the lessor of the plaintiff, but the court disregarded the suggestion, and tried the cause. A verdict in favor of the plaintiff was rendered, for the land, and also for the sum of " three hundred and eighty seven dollars, damages for the detention of the same." The plaintiff then acknowledged of record that he did not claim the land, and judgment was accordingly entered in favor of the plaintiff, and against the defendants, for the damages assessed by the jury, and for costs ; but no judgment was entered for the land. After the other proof in the cause was closed, the defendants introduced a witness, who testified that said Eli M. Driver, the lessor of the plaintiff, was dead, and that he had died since the commencement of the suit. This fact was admitted, but still the trial went on, and resulted as above stated. The defendant Swan then moved the court to set aside said judgment, on the ground that the real plaintiff, said Driver, had died before its rendition. His death was again admitted, but the court overruled the motion to set aside the judgment.

On these facts, the petitioner bases his application for a *mandamus* to compel said court to vacate said judgment, alleging it to be a nullity.

A. J. WALKER, for the motion :

1. A refusal to set aside a void judgment may, possibly, be revised on error, where a party could be made to the writ of error ; but this cannot be the case, where the adverse party is dead, and no party could be made to the writ of error. The plaintiff below being dead, the defendants are without remedy, unless *mandamus* is allowed.—Moore & Cocke v. Bell, 13 Ala. 469; Holford v. Alexander, 12 *ib.* 280 ; *Ex parte* Jones, 1 *ib.* 15.

2. A judgment rendered in favor of a dead man is a nullity ; so, also, is a judgment in favor of a name representing no real existing person. Such a judgment must be set aside on motion. Moore v. Easley, admr., 18 Ala. 622 ; *Ex parte* Sanford, 5 Ala. 562 ; Hood & Stinnett v. Branch Bank of Mobile, 9 Ala. 335 ; Stewart v. Nuckles, 15 Ala. 225 ; Holford v. Alexander, *supra ;* Moore & Cocke v. Bell, *supra ;* Joseph's Admr. v. Joseph's Legatees, 5 Ala. 280 ; Patterson v. Officers of Mobile Circuit Court, 11 Ala. 740.

3. Even conceding that, at common law, the action of ejectment was not abated by the death of the lessor of the plaintiff, yet it is certain that no judgment could be rendered, except for the damages, which were merely nominal, and in favor of the fictitious plaintiff. The rents and profits were not recovered, at common law, by the action of ejectment, but by a subsequent suit.—Tillinghast's Adams on Ejectment 320 ; 1 Chitty's Pleading 220 ; 1 Yeates 156 ; 3 Har. & McH. 98.

4. Whatever may be the common law on the subject, it is clear that, under our statute, no judgment for rents and profits can be rendered, the plaintiff being dead. The statute expressly requires the jury trying the cause " to assess the damages in favor of the real plaintiff."—Clay's Digest 320 § § 43 to 46; The State *ex rel.* Nabors' Heirs, 7 Ala. 459 ; Jordan v. Abercrombie, 15 Ala. 580 ; Rowland & Heifner v. Ladiga's Heirs, 21 Ala. 9.

5. Suppose the decision on the question of title had been in favor of the defendants, the judgment could have been of no validity ; no execution for costs could have been issued. It would have been, in all respects, a nullity. Can, then, a judgment be rendered in favor of a dead man, when none could have been rendered against him ? No person can receipt the sheriff for

Ex Parte Swan.

the damages, when collected. If he should collect them, there is no person who can rule him.

WHITE & PARSONS, *contra :*

No sufficient reasons are set forth in the application to authorize the granting of the motion. The plaintiff waived his right to judgment for the land, as appears by the judgment entry, and took judgment for damages and costs only. In this, it is insisted, there is no error.—Gliddon v. Doe *ex dem.* Andrews, 10 Ala. 171 ; Adams on Ejectment 188; People v. Bradt, 7 Johns. 539. A judgment for the lessors, instead of the nominal plaintiff, is erroneous.—Chambers v. Hundley, 3 J. J. Marsh. 98 ; Wharton v. Clay, 4 Bibb 167.

If, in ejectment, there be a verdict and judgment for defendant, the judgment for costs must be against the nominal plaintiff, and not against the lessor.—Doe v. Owen, 2 Black. 452 ; 2 U. S. Digest 153 § 808.

A writ of error can be sustained in the name of the casual ejector.—Roe v. Bank of United States, 3 Humph. 26 ; 2 U. S. Digest 152 § 790. The death of a sole defendant before verdict will not abate the suit.—Adams on Ejectment 298.

Where the lessor of the plaintiff dies, after judgment in ejectment, the execution may issue in the name of the lessee, without the necessity of a *scire facias.*—Penn v. Klyne, Peters' C. C. R. 446.

Where the lessor of the plaintiff dies pending the suit, judgment will be rendered as if he were still living, and possession will be given, under the control of the court.—2 Munford 453.

Mesne profits, by way of damages, may be recovered in ejectment.—Boyd v. Cowan, 4 Dallas 138 ; Brown v. Galloway, Peters' C. C. R. 291 ; Benson v. Matsdorf, 2 Johns. 169; Murphy v. Guion, 2 Hay. 145.

GIBBONS, J.—As a general rule, it is undoubtedly true that a judgment for or against a dead man is a nullity. This proposition has been so often recognized in this court, that it is not deemed necessary to cite authorities in support of it.

But, whilst this is true as a general rule, it seems to be equally true that, in the action of ejectment, at common law, the death of the lessor of the plaintiff does not abate the suit, and

the nominal plaintiff is deemed competent to continue the action, at least for the recovery of the land and nominal damages.—Adams on Ejectment 320, 335 ; 1 Wendell 27 ; Frier *et al.* v. Jackson *ex dem.* Van Allen, 8 John. 495. At common law in the action of ejectment the plaintiff only recovered the premises sued for, and damages for the ouster, which were generally nominal. " In the action of ejectment," says Mr. Chitty, " as at present conducted, though nominally a mixed action, being altogether a mere fiction, it being brought by a nominal plaintiff against a nominal defendant, for a *supposed ouster*, merely nominal damages are given ; and satisfaction for the injury the real plaintiff has sustained, by being kept out of the mesne profits &c., is not in general included in the verdict in the ejectment."—1 Chitty's Plead. 193. These were the subject of a separate action, called an action for mesne profits ; in form an action of trespass *vi et armis,* " but in effect to recover the rents and profits of the estate."

In remarking upon this latter action, the same author says : " The action for mesne profits may be brought by the lessor of the plaintiff in ejectment, either in his own name or in the name of the nominal lessee, (John Doe ;) but in either shape, it is equally his action ; for it is not in any manner affected by the fiction, which prevails in the ejectment. It is sometimes, however, more advantageous to bring the action in the name of the lessor of the plaintiff, who is the party really concerned, as he may then recover damages for the rents and profits received by the defendant previously to the time of the demise laid in the declaration in ejectment, which cannot be done at the suit of the nominal plaintiff."—1 Chitty's Pl., *supra.*

By analogy, it would seem to follow, necessarily, that when the action for mesne profits was commenced in the name of the nominal plaintiff, the suit would be unaffected by the death of any party in interest on the part of the plaintiff, as the nominal party, John Doe, never dies.

In this country, the action of ejectment is generally understood to be the proper remedy for the recovery of both the lands and mesne profits in the same suit, and the authorities in support of this position are very numerous. For all practical purposes, this enlarged view of this action has much in its favor, as it accomplishes in one action, what could otherwise be effected

only by two. Conceding to the nominal plaintiff the right at common law to recover the lands and nominal damages in the action of ejectment, notwithstanding the death of his lessor, and also the right to bring a suit in his own name for the mesne profits after the recovery in ejectment, it is difficult to perceive any reason, according to the rules of the common law, why he should not have the right to recover both the lands and mesne profits in the same action, where by the rules of practice both could be recovered in the same suit; and this, we apprehend, would be the case in those States where by the established practice the two actions were united, if they were unaffected by statutory provisions.

But however this may be in other States, our statute has placed the action of ejectment upon a basis entirely decisive of the present application. The language of the act of 1835, is, "In all cases where the action of. trespass to try titles would, under the present laws, be the proper action, the plaintiff, at his election, shall have either said action of trespass to try title or the action of ejectment; and when the action of ejectment shall be brought, it shall be lawful, and shall be the duty of the jury trying the same, to assess the damages in favor of the real plaintiff, as in actions of trespass to try titles."—Clay's Digest 320 § 46. By a previous act, passed in 1821, the fictitious proceedings in the action of ejectment had been abolished, and the action of trespass to try titles substituted for it.—Clay's Digest 320 § 43. By the act of 1835, the action of ejectment is restored, but it expressly provides that it shall be the duty of the jury trying the same, to assess the damages in favor of the real plaintiff, as in actions of trespass to try titles. This act evidently contemplates the existence of a real plaintiff in court, whenever a judgment is rendered for the damages. We do not now decide that the nominal plaintiff might not have a sufficient standing in court, in case of the death of his lessor, for the recovery of the premises sued for; but, under the act, a judgment for the damages or mesne profits could only be rendered in favor of the real plaintiff. In the case before us, no judgment seems to have been rendered for the land, but one in favor of the nominal plaintiff for the damages and costs. We say in favor of the nominal plaintiff, because it is admitted of record that the actual plaintiff was dead, and therefore the only

party plaintiff in court was the nominal plaintiff. Such a judgment the court had no power to render, and it was not voidable merely, but void. Before a judgment for damages could have been rendered, parties should have been made; and this raises the question, as to who were the proper parties to be brought before the court.

In the case of the State *ex rel.* Nabor's Heirs, 7 Ala. 459, which was an action of trespass to try titles, the plaintiff having died pending the suit, it was decided that the action ought to be revived in the name of the heirs or personal representatives, according to the nature of the estate sought to be recovered. If it was the freehold that was in litigation, then the heirs were the proper parties ; but, if it was a chattel interest merely that was involved in the action, then it should be revived in the name of the personal representatives. In the case of Jordan v. Abercrombie & Thompson, 15 Ala. 580, which was an action of trespass to try titles, the defendant in the suit, after the judgment in the court below, and after he had sued out a writ of error to this court, died. The question was, in whose name the writ of error should be revived. It was decided that both the heirs and personal representatives were necessary parties, in order to represent the entire interest involved in the litigation. The decision goes upon the ground, that the lands, at the death of the defendant, descended to the heirs, and they were therefore necessary parties to represent that portion of the recovery below. The damages recovered were a charge upon the assets of the deceased, in the hands of the representative, and therefore he was also a necessary party. By parity of reasoning, it would seem to follow that, where the plaintiff died pending the suit, in an action of trespass to try titles, both the heirs and personal representatives would in like manner be necessary parties ; for the lands would in like manner descend to the heirs, and the damages and mesne profits, for which the defendant was liable prior to such death, would belong to the personal representative. This conclusion would be in harmony also with article 2158 of the new Code, which says : " Real actions to try the title, or for the recovery of the possession of lands, and actions for injuries to lands, survive in favor of heirs, devisees, tenants or personal representatives, and against heirs, devisees, tenants or personal representatives, ac-

cording to their respective rights; and the court must direct the record and judgment to be so framed as to secure their rights, and declare their respective interests.''

We deem it important in this connection to notice our act of the legislature of 1839, which says: '' It shall be lawful for administrators and executors to rent, at public outcry, the real estate of any decedent, until a final settlement of the said decedent is effected, and the proceeds shall be assets in the hands of such executors or administrators.''—Clay's Digest 199 § 36. The new Code has also a similar provision. Section 1751 is as follows: ''Administrators and executors may rent the lands of the deceased at public auction, and hire out the slaves of the deceased, either at public auction or by private contract, in each case securing the payment of the rent or hire by notes or bonds with two good and sufficient securities; and the proceeds thereof are assets.''

The act of 1839, giving to the personal representatives the right to the possession of the lands of the decedent until the final settlement of the estate, seems to have been entirely overlooked in the case of Jordan v. Abercrombie & Thompson, *supra*. At all events, we find no notice there taken of it. If the question were now presented for the first time, since the passage of that act, as to who were the proper parties in case of the death of the plaintiff or defendant in the action of trespass to try titles, it might be urged with much plausibility that the personal representative was the only necessary party to be brought before the court, in order to revive the suit. This action of trespass to try titles was intended as a substitute for the action of ejectment, and the latter was a possessory action merely, the verdict and judgment not being conclusive as to the title, even between the parties to the record, so but that another suit could be instituted by the defeated party, immediately after the pending suit was terminated.—Camp v. Forest *et al.*, 13 Ala. 114. If, then, the personal representative has the right to the possession of the lands of his decedent until the final settlement of the estate, and the rents and profits arising therefrom during his administration are to be assets in his hands, it might be asked why he would not sufficiently represent the whole interest involved in litigation, in all cases of ejectment or trespass to try titles, where either the plaintiff or defendant dies pending

the litigation. In either action, if damages are sought to be recovered as mesne profits, and either plaintiff or defendant dies, the representative, if plaintiff, would be entitled to them, and if defendant, he would be chargeable with them. So, if possession of the lands is sought by the suit, he is equally entitled to have it under the act, if plaintiff, and, if defendant, he would seem to be the proper party to yield it. This conclusion, however, necessarily involves the construction of the act of 1839 to mean that it becomes the imperative duty of the representative to take possession of the lands of the decedent, and rent them out until the final settlement of the estate ; whereas we consider the proper construction of the act to be, that he may rent out the lands, or leave them to the heirs, as he thinks proper. Besides, in the action of ejectment or of trespass to try titles, the plaintiff must recover on the strength of his own title, and it would seem to be necessary to bring those parties before the court, in whom the title had vested by the death.

Our action of ejectment would seem to be compounded of the two common law actions, ejectment proper and the action for mesne profits; and that portion of it taken from the latter action is divested by our statute of the privileges which it possessed at common law, so far as it could be carried on by the fictitious plaintiff. By our statute, the jury are required to assess the damages to the *real* plaintiff in the cause. Our conclusion, therefore, is, in an action of ejectment, when damages are sought as mesne profits as well as the lands, if the lessor of the plaintiff dies pending the suit, the personal representative, as well as the heirs, is a necessary party, in order to revive the suit.— In all cases where damages are sought as mesne profits, the representative is an indispensable party. This is, in effect, adopting the same rule as that laid down in Jordan v. Abercrombie & Thompson. The only difference between the two cases is, that in that case the defendant died, whilst in the case at bar it is the lessor of the plaintiff.

The same principle, we think, governs in both cases. This rule we adopt the more readily, as it will be perceived from the article of the new Code above quoted, that the rule which we now establish is the one there laid down, and is, we are satisfied, the only one that can meet the wants and exigencies of the action of ejectment, as regulated by our statute.

The application of the petitioner must, therefore, prevail, and a rule must be issued to the Circuit Court, to set aside and vacate the aforesaid judgment, and to reinstate the cause upon the docket, so that the necessary parties may be made, if those in interest see fit further to prosecute their suit; and, on the failure of said Circuit Court to comply with said rule, to show cause why a peremptory *mandamus* should not issue.