# Jay *v.* Stein *et al.*

### *Real Action in Nature of Ejectment.*

1. *Abatement of action by death.* — In ejectment, or a statutory real action in the nature of ejectment, if one of several defendants dies pending the suit, the action abates as to him, and cannot be revived against his personal representative and heirs or devisees, or either of them, so as to proceed jointly against them and the surviving defendants.

2. *Admission of evidence generally, when offered for specific purpose.* — When evidence is offered for a specific purpose, the party offering it cannot complain that the court refused to admit it for that specific purpose, but admitted it generally; unless the record shows that the opposite party was thereby enabled to use it as evidence for himself, of facts which he could not otherwise have proved by it.

3. *Relevancy of evidence to prove prior possession of land.* — In ejectment, or a statutory real action in the nature of ejectment, the plaintiff may show, as a fact tending to prove prior possession by him, which might ripen into a title under the statute of limitations, that the land was rented out for his use, by his step-father, for several years; but the declarations of his step-father, made at the time of the renting, are not competent evidence.

4. *Payment of taxes on land, as proof of possession.* — The payment of taxes on land is not evidence of possession; but in connection with evidence of actual possession, it is admissible to show the extent of such possession.

5. *Proof of sale of lands.* — In ejectment against the purchaser of lands sold under an order or decree of the Probate Court, the record of the proceedings under which the sale was made is competent evidence for him; and a witness may state the fact, that he purchased the lands at an administrator's sale, without producing his deed.

6. *Sale of decedent's lands, under decree of Probate Court.* — The jurisdiction of the Probate Court, to order a sale of lands belonging to a decedent's estate, is purely statutory, and can only be called into exercise when an application is filed by a proper person, disclosing a statutory ground of sale; an order of sale, not founded on such an application, is a nullity.

7. *Execution of power of sale.* — When an executor applies to the Probate Court for an order to sell lands, and sells as directed in the order, and reports the sale to the court, and recites in his deed to the purchaser that the sale was made under the order of the court, the validity of the sale depends on the validity of the order; and if the order is void, the sale cannot be upheld on the ground of a supposed power of sale conferred by the will. (SAFFOLD, J., dissenting.)

APPEAL from the Probate Court of Monroe.

Tried before the Hon. P. O. HARPER.

This action was brought by John D. Jay, in his own right, and as next friend of his infant sister, Elizabeth E. Jay, against James Stein, Larkin W. Lindsey, and George W. Riley ; and was commenced on the 11th September, 1868. At the Spring Term, 1871, the death of said Lindsey was suggested, and a *sci. fa.* was ordered to issue to his personal representatives. At the Spring Term, 1872, Geo. W. Riley, as the executor of said Lindsey, was made a party, and pleaded, " that he is not now,

and was not at the commencement of this suit, in possession of the land mentioned in the complaint, or any part thereof, as the executor of said L. W. Lindsey ; and suggests to the court, that eighteen months have not yet expired since his qualification as such executor." The plaintiff demurred to this plea, and reserved an exception to the overruling of his demurrer. " Thereupon," as the bill of exceptions recites, " the court suggested, of its own motion, that the heirs of said Lindsey were proper parties, instead of his executor, and that the cause could not proceed as against him, but must be discontinued ; to which ruling of the court the plaintiff excepted, and then discontinued the suit as to said executor, and struck out of the complaint that part of the land which was in the possession of said Lindsey at the commencement of the suit." The defendants, Stein and Riley, each admitted his possession of a portion of the land sued for, and pleaded, " in short, by consent, 1st, not guilty ; 2d, adverse possession for three years ; and, 3d, the statute of limitations of ten years ; " and issue was joined on all of these pleas.

The plaintiffs were the only children and heirs-at-law of William A. Jay, deceased ; and they claimed the land under a sale made by the said William A. Jay, as the executor of his deceased father, John Jay, under an order of the Orphans' Court of said county, as hereinafter more particularly stated, and a conveyance by the purchaser at that sale to the said William A. Jay ; while the defendants deduced title under purchases at a subsequent sale, made by the administrator *de bonis non* of said John Jay, under an order of the Probate Court of said county. The sale by the executor, under which the plaintiffs claimed, was made on the 30th day of December, 1845 ; but the record does not show at what time the sale by the administrator *de bonis non* was made.

The plaintiffs offered in evidence, on the trial, the will of said John Jay, together with its probate in the Orphans' Court of said county on the 5th May, 1845. The material parts of said will were as follows : " I give and bequeath unto my wife, Edna Jay, all my real and personal estate, consisting in lands, negroes," &c., " and all other estate that I now own, possess, or am in any wise entitled to ; to have and to hold during her lifetime, and to sell such parts as she thinks proper, and divide the proceeds equally among my lawful heirs ; and at the death of my said wife, for all my estate that remains unsold, to be sold, and equally divided among my lawful heirs." The testator appointed his widow and his son, said William A. Jay, as the executrix and executor of his will. The widow dissented from the will, and renounced her right to administer on the estate ; and letters testamentary were thereupon issued to said William A. Jay.

The plaintiffs offered in evidence the order of sale granted to said executor by the Orphans' Court, the executor's report of the sale, and his deed to the purchaser. The order of sale was in these words : " On the application of William A. Jay, administrator of John Jay, deceased, it is ordered, that the said William A. Jay be authorized to sell all the personal estate of his said testator; also, all the real estate, to wit " (specifying it), " on a credit of twelve months, purchasers giving notes with approved security ; the said sale to be conducted in the manner prescribed by law, after first giving the legal notice of the time and place of said sale, as required by law." The report of sale specified the price bid for each parcel of the land, aggregating $1,002, and stated that Josiah Curry was the purchaser of the entire tract. The executor's deed to said Curry was in these words : " In pursuance to an order of the County Court of Monroe County, made on the 6th day of October, A. D. 1845, to me, William A. Jay, to sell the real estate of John Jay, deceased, I sold the same to Josiah Curry, of the said county, on the 30th day of December, 1845, for one thousand and two dollars, he being the highest bidder therefor. Know all men by these presents, that I, William A. Jay, administrator of the estate of John Jay, deceased, of the one part, and Josiah Curry of the other part, *witnesseth*, that I, William A. Jay, for and in consideration of the sum of one thousand and two dollars, to me in hand paid by the said Josiah Curry, have bargained and sold, and by these presents do bargain and sell, unto the said Josiah Curry, a certain parcel of land," describing the lands sued for; " the titles whereof, I, William A. Jay, do forever warrant and defend unto the said Josiah Curry," &c. There were no subscribing witnesses to this deed, nor was it recorded ; but its execution was proved. The deed from said Curry to said William A. Jay, for the same lands, recited the payment of $1002 as its consideration, and was dated the 2d January, 1846. It was proved that no money was paid by said Curry, and that the purchase money was in fact paid by said William A. Jay.

" When the plaintiffs offered in evidence the order of sale and the report of the sale, they stated that it was only intended for the purpose of identifying the land sued for, and for no other purpose ; but the court held that it was not admissible for this purpose. The plaintiffs excepted to this ruling, and then offered the evidence without reservation or condition ; and the court admitted it."

" Lewis Watson testified that William A. Jay went into the possession of the land sued for, and continued in possession, exercising acts of ownership over it, up to his death, which occurred about three or four years afterwards ; also, that after

[Jay v. Stein.]

the death of said William A. Jay, the land was rented by him (witness) a part of the time, and a part of the time by one McIntyre, and a part of the time by the mother of the plaintiffs, for their use, for about six years longer; that during a part of said years, when the land could not be rented out, it lay out, but was claimed all the time as the property of said plaintiffs; that said claim was well known and understood in the neighborhood, and was never denied or disputed, up to the time when it was resold by Jacob Rikard, some ten or twelve years after the purchase by said William A. Jay from said Curry; and that he paid the taxes on the land for several years, for the plaintiffs in this case, and took receipts for the same. Said witness also stated, on cross-examination, that he was authorized to rent out the land, and to pay the taxes on the same, by one McNair, who had married the plaintiffs' mother after the death of their father, but that he had no authority to do so from the plaintiffs, who were then minors. Thereupon the defendants asked the court to exclude from the jury all that the witness had said relative to his renting the land for the use of the plaintiffs, which was done, and the plaintiffs excepted. The plaintiffs then asked said witness to state all that McNair said, relative to the land, at the time he gave him authority to rent and pay taxes on the same; to which question the defendants objected, and the court sustained the objection; to which the plaintiffs excepted. The plaintiffs then offered the tax-receipts in evidence; to which the defendants objected, and the court sustained the objection; to which the plaintiffs excepted.

"The plaintiff, John D. Jay, was examined as a witness, and testified that he and his sister were under age when their father died; that they had continued to claim said lands since his death, by virtue of the inheritance; that said lands were kept and controlled for their use, while they were under age, by their mother and step-father, McNair; that they lived in Barbour County, and he himself was never on the land but twice in his life; that he was on it once before the commencement of this suit; that he did not know, of his own knowledge, that it was the same land, but spoke from what he had been told; and that he did not know, of his own knowledge, that it had been rented at all. W. T. McIntyre testified that he administered on the estate of said William A. Jay, and controlled and rented the land as such administrator, for the use of the estate; that he resigned the administration before the estate was wound up, and knew but little of the land afterwards. The land claimed by the defendant Stein was proved to have been unimproved, and to be worth from fifty to one hundred and fifty dollars *per annum*.

"The defendants offered in evidence the appointment of

Jacob Rikard as administrator *de bonis non* of the estate of said John Jay, deceased," which was dated April 16, 1860; "also, the petition, testimony, and order for the sale of lands under said administration, which were admitted to be in due form, but to the introduction of which the plaintiffs objected, on the ground that the title to said land had passed out of said estate, by the former sale made by the executor, and that the subsequent sale was consequently void. The court overruled the objection, and the plaintiffs excepted. The defendants offered in evidence, also, proof of the sale, and of the report and confirmation thereof; to which the plaintiffs objected, on the same grounds as above stated; which objection was overruled, and plaintiffs excepted. Jacob Rikard testified that he sold the land as administrator *de bonis non*, and executed deeds to the purchasers, who were the defendants in this case; which deeds were in evidence, and were admitted to be regular in form. Said Rikard further testified that he knew of the claim set up by the plaintiffs to said lands, before he took out letters of administration; that the money received by him was Confederate currency, and was returned by him into said Probate Court, as there were no debts against said estate. Geo. W. Riley testified that he purchased the land claimed by him, at the sale made by said Rikard; and that he had made improvements on the land, by clearing, building fences, &c., to the amount of $300; and that the rents were worth about $50 *per annum*. The plaintiffs objected to proof of the purchase by oral evidence, and demanded the deeds; which objection was overruled, and plaintiffs excepted. It was in evidence that, at the time of the sale by said Rickard, and for many years before, the said land was not occupied by any one, and no one was in actual possession of it; and that the defendants, on their purchase, were put in possession by said Rikard, without objection, and had continued in possession ever since, under and by virtue of their said purchase.

" This being all the evidence, the court charged the jury, among other things, that there was no power under the will in William A. Jay, as executor, after the widow's dissent, to sell the lands; and that if there was no petition by said executor for the order to sell, the Probate Court had no jurisdiction, and the order and sale would be void. The plaintiffs excepted to this charge, and to each part thereof, and then requested the following charges, which were in writing: —

" 1. If the jury find from the evidence, that William A. Jay and the plaintiffs, together, have occupied and possessed said lands under color of title, for several years, *bonâ fide*, having purchased and paid for the same, next before the possession of the defendants commenced, then the plaintiffs are entitled to recover.

[*Jay v. Stein.*]

" 2. If the jury believe, from the evidence, that William A. Jay bought the land from one who had the power to sell, and paid all or a part of the purchase money, and took a deed for the land; and that the said Jay never parted with the title to said lands in his lifetime, but the same descended to his heirs; and that the plaintiffs are his lawful heirs, and took possession of said lands as his heirs, — then the plaintiffs are entitled to recover.

" 3. Payment of the purchase money, in whole or in part, is sufficient to pass the legal title.

" 4. If the jury find that the will contained the power to sell the land, and that said William A. Jay was the sole executor of said will, then he had the power, and it was his duty to sell under said will; and if they further find that he did sell under the power given in said will, although there may have been an order obtained from the County Court, yet the sale would be good, and the title would pass to the purchaser, if he complied with the terms of sale.

" 5. If, at the time of the pretended sale made by said Rikard as administrator *de bonis non*, the plaintiffs were claiming the land, under a good, or even an adverse title, the said sale by Rikard was void, and could convey no title.

" 6. If the jury believe, from the evidence, that the County Court of Monroe granted letters testamentary to said William A. Jay on the estate of John Jay, deceased, and that he qualified as executor, and that the order was granted for the sale of the land, this was sufficient to give the Probate Court jurisdiction; and that when jurisdiction once attaches, the jury is bound to presume that it continued, until the contrary is made to appear, and the burden of proving a want of jurisdiction is on the defendants.

" 7. If the jury find that an order for the sale of said lands was granted by the County Court of Monroe, the law will presume that such order was regular, and that the court had jurisdiction, until the contrary appears, and the burden of proving this is on the defendants.

" 8. If the jury find, from the evidence, that an order for the sale of the lands was granted to the executor, and that such order was regular on its face, the law will presume that all other things were done and performed which the law required to be done, until the contrary appears, and the burden of showing this is on the defendants.

" 9. If the jury find, from the evidence, that William A. Jay sold the land under the will of his testator, then no petition was necessary; and this must be determined from the evidence, whether the sale was under the will, or under an order of the court; and the mere fact that there was an order is not conclusive that the sale was made under it."

[Jay v. Stein.]

The court refused each of these charges, and the plaintiffs excepted to their refusal; and they now assign as error all the rulings of the court to which, as above stated, they reserved exceptions, — nineteen in number.

J. M. WHITEHEAD, for appellants.

CUMMING & POSEY, contra.

BRICKELL, J. — When one of several defendants in ejectment dies, pending the suit, the action abates as to him. It is not capable of revivor against his personal representative, and heirs or devisees, so as to proceed jointly against them and the surviving defendants. The suggestion of the death is entered of record, and the cause proceeds against the survivors. It is said, in such case, if the defendants had made joint defence, and the plaintiff recovered, the judgment against the survivors ought to be general, — that the plaintiff recover his entire term in the premises, — because, by survivorship, the whole comes to the other defendants. If the defendants made separate defence, then the plaintiff is entitled to judgment against the survivors, only for the parts of the premises in their possession. How this may be under our statutes, it is not necessary for us now to inquire and decide. It is sufficient to declare, that the death of Larkin W. Lindsey operated an abatement of the suit as to him, and that it was incapable of revivor. Adams on Ejectment, 332; Jackson on Real Actions, 137; *Farr* v. *Den*, 1 Burr. 362. This rule prevailed as to actions *ex contractu*, until the enactment of the statute, R. C. § 2546. *Rupert & Cassidy* v. *Elston*, 35 Ala. 79. When an action of ejectment, abating by the death of a defendant, is capable of revivor, if the plaintiff seeks a full recovery in the action, the revivor, under our practice, must be against the personal representative, and the heirs or devisees of the deceased defendant. If he abandons all claims to a recovery of possession, and seeks only a recovery of damages, by way of mesne profits, he can revive against the personal representative alone. If, waiving all claim to mesne profits, he seeks only a recovery of the possession, he may proceed against the heirs or devisees, without joining the personal representative, for in them the title is vested. *Jordan* v. *Abercrombie*, 15 Ala. 580; *Ex parte Swan*, 23 Ala. 192. The action abating as to the deceased defendant, Lindsey, and not being capable of revivor, the judgment of the court, finally pronounced, produced that result. If any errors intervened in the rendition of that judgment, or in overruling the demurrer of the appellants to the pleas of Lindsey's executor, they produced no injury.

2. The appellants offered in evidence, as the bill of exceptions states, for the sole purpose of identifying the lands in controversy, an order of sale granted by the Orphans' Court of Monroe County, to the executor of John Jay, deceased, and the report of the sale, made to the court by the executor. The court refused to permit the plaintiff to give them in evidence, limiting them to that specific point, but admitted them generally. If they were admissible for the specific purpose to which appellants proposed to limit them, they had the benefit of them for that purpose; and we cannot see how they could possibly be injured by being required to offer them in evidence generally. There are cases in which a party may offer evidence for a specific purpose; and if he was compelled to offer it generally, his adversary would be enabled to use it as evidence for himself of other facts, of which it would not have been for him competent evidence. In such case, it would be erroneous not to allow the party to use the evidence for the specific purpose. This case, however, does not belong to that class of cases. That the appellants gave in evidence the order and report of sale, could not make them evidence for the appellees, to any extent to which they would not have been if they themselves had introduced them. *Richardson* v. *Hobart*, 1 Stew. 500.

3. The witness Watson testified that the ancestor of appellants died in possession of the lands, the subject of this suit; that after his death the lands were rented for several years, — a part of the time by the witness, a part of the time by one McIntyre, and a part of the time by the mother of the appellants; and that these rentings were for the use of the appellants. The appellants were minors, and the witness stated that he had no authority for renting the lands, except what he derived from one McNair, their step-father. This evidence was excluded by the court, and, we think, erroneously. It tended to prove a prior possession, on which the appellants could maintain ejectment, against one subsequently entering, and who could not show or connect his entry with title. It also tended to show an adverse possession, which, if continued for the period prescribed as a bar to an entry, or to an action for the recovery of possession, would ripen into title. But there was no error in refusing to permit this witness to state all that McNair said relative to the land at the time he gave authority to rent and pay taxes on the land. If McNair's declarations could, in any aspect of the case, be legal evidence for the appellants, it is not shown by the record.

4. The payment of taxes can only be material in the event it appears that, when paid, the appellants, by themselves, or persons holding under them, and claiming in subordination to

their title, were in actual possession of the lands, or some part thereof. Payment of taxes is not, in any sense, evidence of possession. If there is an actual possession, it may be a fact tending to show the extent of such possession. *Sorber* v. *Willing*, 10 Watts, 141.

5. The record from the court of probate, showing the appointment of Rikard as administrator *de bonis non* of John Jay, and all the proceedings in reference to the sale of the lands, under which appellees claim, were properly received in evidence. They were necessary links in the chain of the title of appellees, and are evidence for them whenever their title is drawn in question. *Richardson* v. *Hobart*, 1 Stew. 500. Nor was there error in admitting the evidence of the witness Riley, that he purchased the land claimed by him, at the sale made by Rikard as administrator. This may not have been sufficient, but it was admissible evidence. *Robinson* v. *Tipton*, 31 Ala. 595.

6. In the charges given and refused, the court did not materially err. It is an undisputed fact that John Jay, who died in 1845, was at his death seised in fee of the premises in controversy. The appellants deduce title from a sale made by his executor, under an order of the former Orphans' Court of Monroe County. This sale was a nullity, and did not divest the title of the heirs or devisees of John Jay, nor interpose any impediment to the decree of sale rendered by the court of probate, on the application of his administrator *de bonis non*, in 1860. At common law, an executor or administrator was the representative of the personalty only. He had no interest in, or authority over, the lands of the testator or intestate. All the power which he may now exercise over lands is derived from statute, or from the will. The jurisdiction of the former Orphans' or County Court, and of the present court of probate, to order lands to be sold, on the application of the personal representative, is purely statutory. This jurisdiction cannot be called into exercise, except by an application in writing, disclosing a statutory ground of sale, filed and recognized by the court. *Wyman* v. *Campbell*, 6 Port. 219; *Bishop* v. *Hampton*, 15 Ala. 761. The order of sale granted to the executor in this case, was made without an application disclosing any cause or ground of sale whatever; and the sale, therefore, stands as if it had been made by the executor without an order of court, and, of consequence, is a mere nullity, if dependent on that order alone.

7. By the will, the testator devised his estate, real and personal, to his wife for life, and empowered her to sell any part thereof, at her discretion, and divide the proceeds amongst his heirs. At her death, he declared all his estate remaining un-

[Jay *v*. Stein.]

sold must be sold, and the proceeds divided amongst his heirs. It is now insisted, that the widow having dissented from the will, the time of the sale, authorized by the will at her death, was hastened, and the executor, under this discretion, had power to sell the lands ; and that the sale made may and should be referred to this discretion in the will. Some of the charges asked by the appellants, and refused, were intended, doubtless, to present this question. We do not intend to decide now, whether this discretion in the will creates a power which the executor could exercise without the intervention of a court. Nor do we intend to decide that the dissent of the widow hastened the time prescribed in the will for the execution of this discretion or power. For it is certain the sale was not made in the execution of this discretion or power, but under the invalid order of sale granted to the executor by the Orphans' Court. Judge Story says : " It is a general rule, in the execution of a power, the donee of the power must clearly show that he means to execute it, either by a reference to it, or to the subject matter." 2 Story's Eq. § 1062. This is a simple, intelligible rule, which was recognized and declared by this court in a case not dissimilar to this. *Ala. Conference* v. *Price*, 42 Ala. 39. The executor here, in effect, repudiated the power of sale conferred by the will, if any was conferred. He did not intend or pretend to act under it. He obtained an order from the Orphans' Court, invalid it is true, authorizing him to sell. He made the sale under that order, as is expressly recited in his conveyance to the purchaser, without any reference to the will of the testator, or any power, real or supposed, conferred by it. He reports the sale for confirmation to the Orphans' Court. It is impossible to refer this sale to any power contained in the will, if there is such power.

For the single error in excluding that part of the evidence of the witness Watson, to which we have referred, the judgment is reversed, and the cause remanded.

SAFFOLD J. — I admit the rule, as stated in the opinion of the court, that a power cannot be considered as having been executed unless the intention of the donee to do so is made to appear. But I cannot concur in the application of it made to this case. It is as impossible to ascertain intention by rule, as it is to define fraud. What a person says of his intention is no more indicative of it than his acts. When we know all that he has said and done about a matter, then we form an opinion of his intention from the whole evidence. William A. Jay, as executor, had authority, under his father's will, to sell the land in question. The order of sale made by the Orphans' Court, and his reference to it in his deed to the purchaser, are facts

[Jay *v.* Stein.]

tending to prove the intention as to the power under which he acted. But are they so dominant as to restrict his intention to that authority alone? I think not, because the one is not necessarily exclusive of the other. He might very reasonably have thought the sanction of the court, to which he was accountable, would have aided his authority under the will, instead of destroyed it. He was executor by the will, yet he knew he must obtain letters testamentary. If he had not, in his deed, referred to any power under which he acted, his sale would be supported by the will. The opinion of the court, as I construe it, makes his declaration of a sale under the order conclusive of his intention. Is not the sale itself evidence of an intention to make a valid sale? Is not his purchase of the land afterwards, with the payment of the purchase money, further evidence of the same intention? Are not the imperfect proceedings in the court some indication that he did not rely on the order of sale, as in *Lee & Lewis* v. *Glover*, at June Term, 1872. If the intention with which an act is done is doubtful from all the evidence, ought it not to be left to the jury to ascertain it? The devisees of the testator acquiesced in this sale for fifteen years.

When all the circumstances admissible in evidence convince us that the vendor, acting in proper capacity, could not reasonably have intended to forego the exercise of any authority operative at the time, which would make his sale valid, can his declaration of an intention different, but not necessarily incongruous, exclude the other evidence of intention to refer his act to whatever authority he had which would support it? I cannot conceive how the executor, Jay, in selling the land as executor, could voluntarily repudiate his authority under the will. If he applied to the court, because he doubted about his power, such deference to the law and to right ought not to prove a snare to him.

When the will was made, an administrator with the will annexed could not exercise a power of sale given in it to the executor. Section 1609 of the Revised Code was passed subsequently, but before the sale made by the administrator *cum test. an.* in 1860. It is general enough in its terms to extend the authority given to the administrator over an antecedent will. No constitutional provision forbids such application. Perhaps construction ought to limit it to wills made after its adoption, as the law of personal trusts might have influenced the testator in bestowing only a naked power. But if it should be held to apply to wills made before its passage, the authority of *M. E. C. South* v. *Price* (42 Ala. 39) would invalidate the sale made by the administrator with the will annexed. The objection I have to that decision is, it ascertains the intention from a part of the testimony only.