[Baucum & Jenkins v. George.]

# Baucum & Jenkins *v.* George.

*Statutory Real Action in nature of Ejectment.*

1. *Declarations explanatory of possession.*—The declarations of a person who is in possession of land, narrative of a past transaction, extending beyond an explanation of his possession, are not admissible evidence, though declarations explanatory of possession are admissible ; as, "that he had bought the land," which is competent, as showing that he held under claim of title, and not in subordination to another.

2. *Secondary evidence of records.*—The existence of a record or office paper, and its subsequent loss, having been shown, its contents may be proved by secondary evidence, as in the case of other documents ; and if the record or paper was ancient, less strictness of proof is required than if it were recent.

3. *Secondary evidence of execution, levy and sale.*—Memoranda made by a sheriff in the discharge of his official duty, describing an execution, its levy, and the sale of lands under it, are competent secondary evidence of the facts therein stated, when a proper predicate has been laid for the introduction of secondary evidence.

4. *Sheriff's competency to execute process.*—Under the statute which was of force in 1852 (Clay's Digest, 59, § 2), a sheriff was incompetent to execute process, when he was "a party in interest;" but the incompetency did not extend to the levy of an execution in favor of his father-in-law, as the assignee of the judgment.

5. *When plaintiff may recover.*—In ejectment, or the corresponding statutory action, the plaintiff must recover, if at all, upon the strength of his own title—must show in himself a present right of entry and possession, without regard to the character of the defendant's possession.

6. *Parol evidence in aid of deed, identifying lands conveyed.*—When a tract of land is described in a conveyance as the "*Douglass Gold Mine,*" without other words of description, parol evidence is admissible to identify it as the land sued for, which was once bought at a sheriff's sale by one Douglass, under whom plaintiff claims by mesne conveyances, and to whom it was conveyed by deed in which it was described by its government numbers.

7. *Proof of deed.*—Under the statute now of force (Code, § 2194), a conveyance is not self-proving, or admissible as evidence without proof of its execution, unless it was recorded within twelve months after its execution ; and under the statute which was of force in 1843 (Clay's Digest, 151, § 1), a deed which was executed, acknowledged and recorded, according to its provisions, was and is also self-proving.

8. *Objection to evidence.*—When a single ground of objection is urged to the admission of evidence in the primary court, and is there overruled, the appellate court will not consider its admissibility on any other ground.

9. *Notoriety of name; when admissible to identify land.*—Notoriety is admissible evidence to show that the lands sued for were generally known in the neighborhood as the "*Douglass Gold Mine,*" by which name they were described in one of the deeds constituting a link in the plaintiff's chain of title ; but a witness, being asked whether he had ever heard the land so called, can not be allowed to state "that M. said that H. said he got the mine from Douglass."

10. *Declarations in disparagement of title.*—The declarations of the vendor, in disparagement of his own title, are competent evidence against a subsequent purchaser ; and the declarations of a purchaser at a sale for taxes, that he is buying as the agent of another, are also admissible against his subsequent vendee.

[Baucum & Jenkins v. George.]

11. *Impeaching or sustaining witness.*—When the testimony of a witness on a material point is contradicted by the testimony of other witnesses, but no evidence has been adduced impeaching his general character for truth and veracity, the party by whom he was introduced can not be allowed to adduce evidence sustaining his general character.

12. *Adverse possession; what constitutes.*—When a person enters into the possession of land as the agent of another, his possession, or that of others claiming under him, can not become adverse to his principal, until there has been an open disclaimer of the title under which he entered, and the assertion of a hostile title, brought home to his principal, or to those claiming under him.

13. *Same.*—To constitute an adverse possession, it is not necessary that the claim of title should be good, or even believed to be good : it is enough, if there be a real, *bona fide* purpose to assert and rely on it, as hostile to the true owner.

14. *Same.*—The possession must be as definite as the character of the land will permit ; but occupancy of a part, under color of title defining the extent of the claim, extends to the boundaries specified in the claim.

APPEAL from the Circuit Court of Clay.

Tried before the Hon. JOHN HENDERSON.

This action was brought by Charles H. George, against William Baucum and William H. Jenkins, to recover the possession of a tract of land, which was described in the complaint as the " west half of the south-east quarter of section thirty-four (34), township twenty (20), range six (6) east, " together with damages for its detention ; and was commenced in July, 1874. Under the facts proved on the trial, and the charge of the court, the plaintiff had a verdict and judgment for " eleven-twelfths of the west half of the west half of the south-east quarter of section thirty-four (34), except as to the part reserved in the Douglass deed, and one-twelfth interest of the west half of the south-east quarter of said section thirty-four (34), except the width of a road across the north end of said land, " &c.    The plaintiff claimed title to the lands sued for, under the following deeds : 1st, a sheriff's deed to Robert Douglass, as the purchaser at a sale under execution against John Yarborough, in favor of Isaac Hudson ; 2d, a deed from Robert Douglass and wife to Samuel M. Hill ; 3d, a deed from said Samuel M. Hill to Sumter Lea ; 4th, a deed from said Lea and wife to James A. Curry ; and, 5th, a deed from said Curry and wife to plaintiff. On the trial, as the bill of exceptions states, the plaintiff introduced one Reagin as a witness, " who testified that, between the years 1845 and 1850, John Yarborough dug gold ore on the north-western part of the west half of the south-east quarter of section thirty-four (34), township twenty (20), range six (6), and hauled said ore to a pounding mill on the land, roasted and beat it, ran it through rockers, and gathered the gold from the ore by means of quicksilver in the rockers. Said witness was asked to state,

who, if any person, claimed ownership of the land during Yarborough's possession; to which he answered, that Yarborough said he had bought it." To this question and answer, each, the defendants objected; and they duly excepted to the overruling of their objections. The witness testified, also, that said Yarborough, while he was engaged in digging gold on the land, "resided about two miles distant from it, and that he left the neighborhood about twenty-five or thirty years ago"; and another witness for the plaintiff "testified to the same facts, substantially, concerning the residence and digging of gold by said Yarborough."

The plaintiff offered in evidence a transcript of the record in the case of Hudson against Yarborough, "and the proceedings in said cause before and after the rendition of said judgment." This transcript showed that the judgment was rendered on the 15th November, 1848; that an execution was issued on it, on the 27th November, 1848, on which a part of the money was made; that other small credits were afterwards indorsed, but leaving a balance still unpaid; and that on the 15th January, 1852, for value received, the plaintiff in the judgment transferred and assigned it to Robert Douglass. To prove the issue of another execution, its levy on the lands in controversy, and their sale under the levy, the plaintiff introduced one Andrew Lawson as a witness, who was the sheriff of Talladega county from March 1st, 1851, until March 1st, 1854, and who produced a memorandum, which he said "was a correct copy of what was written by him in a book kept by him during the time he was sheriff, and in which he kept a memorandum of process served by him, and what he had done under it." This memorandum stated the name of the case—*Isaac Hudson v. John Yarborough*—the receipt of an execution issued on it, in January, 1852; its levy on "the undivided twelfth part" of the lands here in controversy; the sale of the lands on the first Monday in August, 1851, and their purchase at the sale by said Isaac Hudson. Said Lawson testified, also, "that he remembers to have had two executions in his hands, as sheriff, against said Yarborough, and in favor of Isaac Hudson; that the first execution received by him was levied on real estate, which was sold; that he had some recollection of having levied the last execution, and it was intended to be levied on land not sold under the first, known as the 'Harrell Gold Mine;' that the judgment had been transferred to Robert Douglass, who was the father-in-law of witness, and he felt anxious to make the money for said Douglass; that he did not remember selling lands under this execution, or making a deed to Douglass; that he had

no recollection of the amount or contents of the levy of either of said executions, or the contents of the levy of the last execution, his recollection being indistinct as to some of the matters stated in the memorandum. Plaintiff then asked said witness to state whether or not the written memorandum was correctly made by him ; to which he answered, that he always tried to make such entries correct. The defendants objected to this answer, " and reserved an exception to the overruling of their objection ; and they also excepted to the admission of the memorandum as evidence, on the facts above stated. The plaintiff then introduced the clerk of the Circuit Court of Talladega as a witness, who testified, " that he had recently made diligent search in his office for the execution under which the land in controversy was sold, and could not find it ; also, that the execution-docket, containing the entry of said judgment against Yarborough, did not contain any entry of the issue or return of such execution, or the levy thereof, or the sale of the lands in controversy. "

On these facts, the plaintiff offered in evidence the sheriff's deed to Robert Douglass for the lands in controversy ; which was dated the 15th March, 1852, recited the issue of an execution on Hudson's judgment against Yarborough, on the 15th January, 1852, its levy on the lands, their sale under the levy, and purchase at the sale by said Douglass. The defendants objected to the reading of this deed as evidence, but without specifying any particular ground of objection ; and the court declined to decide whether or not the deed was admissible, until the plaintiff had adduced all his evidence. The plaintiff then offered in evidence a deed from said Robert Douglass to Samuel M. Hill, which was dated the 14th March, 1852, and duly admitted to record, on the acknowledgment of said Douglass and his wife, on the 20th March, 1852. The defendants objected to the admission of this deed as evidence, " because the only title or evidence (?) shown in the grantor is the deed from Lawson as sheriff, and no authority has been shown for Lawson to sell the land, or to make the deed ; and because Lawson, being related to said Douglass, was incompetent to sell and convey the land to Douglass. " The court overruled the objections, and admitted the deed ; and the defendants excepted.

The plaintiff then offered in evidence a deed from Samuel M. Hill to Sumter Lee, which was without date, was attested by two witnesses, and was admitted to record, on proof by one of the subscribing witnesses, on the 18th February, 1871. The deed was very informal, and purported to convey the grantor's " right, title, and interest in that portion of

grou⌐ ⁻ called the *Douglass Coal Mine*, in Talladega county, "
with  t other words of description. The defendants objected
to th⌐ admission of this deed as evidence, " on the ground
that ⌐ is void for uncertainty, and does not include the land
soug⌐ . to be recovered in this suit ; and because there is no
evidence of possession or title in the grantor, as to the land
in cor ʹroversy. "  The plaintiff stated to the court, when
offering the deed, " that it was offered in connection with
oral evidence that, by the term ' *Douglass Gold Mine*,' the
partiʒʒ to this deed meant the land here in controversy. "
The court overruled the defendants' objections, and admit-
ted the deed ; to which ruling the defendants duly excepted.
The plaintiff afterwards introduced one Thomasson as a
witness, and, " for the purpose of showing that the land now
in controversy was known as the ' *Douglass Coal Mine*,'
asked him to state " whether he had ever heard said land so
called " ; to which he replied, " that he had heard it so
called.   The witness was then asked, on cross-examination,
" to give the name of each person whom he had heard
so call the mine ; in reply to which question he stated, that
he had heard it so called by Munroe, and had himself so
called it ; also, that Morgan said that Hill said, he got the
mine from Douglass. " To this last statement the defendants
objected, " on the ground that it is not responsive to the
interrogatory " ; and they duly excepted to the overruling of
their objection.

The plaintiff offered in evidence a deed  from Sumter Lea
and wife to James A. Curry, which was dated the 17th
February, 1871, was acknowledged before a justice of the
peace on the 18th February, 1871, and was recorded in June,
1875.   The defendants objected to the admission of this
deed as evidence, " because there is no evidence of pos-
session or title in the grantor, as to the lands in controversy ;
and because the probate and certification are not evidence of
the execution of the deed, and do not authorize its registration,.
so as to make it admissible as evidence. "  The court over-
ruled the objections, and admitted the deed ; to which the
defendants excepted.  The plaintiff then offered in evidence
a deed from said James A. Curry and wife to himself, which
was dated the 4th December, 1871, and attested by two sub-
scribing witnesses, before the probate judge, on the 22d
August, 1874, and admitted to record on the 22d June, 1875.
The defendants objected to the admission of this deed as
evidence, on the " ground that its probate and registration
are not evidence of its execution " ; and they reserved an
exception to the overruling of their objection.

The plaintiff offered in evidence, also, a deed from Jesse

Harrell and wife to Robert C. Wilson, for a part of the land sued for, and a deed from said Wilson and wife to himself, for the same portion. The deed from Harrell and wife to Wilson was dated the 2d September, 1843, and was attested by two witnesses ; was acknowledged by the grantors, on the day of its date, before a justice of the peace, whose certificate of that fact was indorsed on it ; and the certificate of the clerk of the County Court was also indorsed on it, stating that it was left in his office for registration on the 21st November, 1843, and was duly recorded. The plaintiff himself testified, in reference to this deed, " that he received it from Robert C. Wilson, about two years ago." On these facts, the defendants objected to the admission of the deed as evidence, " on the ground that there is no evidence of its execution " ; and they reserved an exception to the overruling of their objection. The deed of said Wilson and wife to plaintiff was dated the 22d May, 1874, and was attested by two witnesses ; and indorsed on it was the certificate of the probate judge, dated the 5th June, 1875, stating that its execution was proved before him that day by one of the subscribing witnesses, and it was then filed for record. The defendants objected to the admission of this deed as evidence, " because its execution is not proved, and because the certificate of registration and probate indorsed on it do not render it admissible without further proof of its execution " ; and they reserved an exception to the overruling of their objections.

There was testimony tending to show that the gold mine on the lands was discovered and opened by one Jesse Harrell, about the year 1841, or 1842, he being then in possession of the land ; and that the mine was sometimes called, after his name, and sometimes after the name of Douglass. In 1868, W. J. Harrell caused a portion of the land described as " seventy-seven acres in the west half of the south-east quarter " of said section thirty-four (34), to be returned to the tax-assessor, as belonging to an unknown owner ; and it was accordingly assessed and sold for unpaid taxes, in March, 1869. Said W. J. Harrell became the purchaser at the tax-collector's sale, and received a certificate of purchase ; and on the 2d January, 1874, he received a deed from the judge of probate. A short time afterwards, said W. J. Harrell sold and conveyed the lands by quitclaim, to the defendants ; and they were in possession under this conveyance when the suit was brought. Said W. J. Harrell, who was introduced as a witness by the defendants, testified to his purchase of the land at the sale for taxes, and was asked, on cross-examination, " if he did not

state, at the time said land was offered for sale, that he was acting as the agent of Hill, and would purchase the land as the agent of Hill"; to which he replied, that he did not make such statement. The plaintiff afterwards introduced Jere Williams and Isaac Baird as witnesses, each of whom testified that, at the sale for taxes, Harrell stated that he was Hill's agent, and that he would bid off the land for Hill; and the bill of exceptions states that this evidence was offered, "not to impeach the witness Harrell, but for the sole purpose of showing that said Harrell was the agent of Hill." The defendants afterwards introduced one Ledbetter as a witness, " and proposed to prove by him that he is well acquainted with the general character of said W. J. Harrell for truth and veracity, in the neighborhood of his residence, and that his character for truth and veracity is good. " The plaintiff objected to this testimony, and the court sustained his objection; to which ruling an exception was duly reserved by the defendants. The defendants offered in evidence, also, " for the purpose of showing title in themselves to the land in controversy, " the deed of the probate judge to said W. J. Harrell, and Harrell's deed to them; and the court having sustained an objection to the admissibility of the deeds for this purpose, " they then proposed to read said deeds in evidence for the purpose of showing color of title in themselves and said Harrell, from the 1st day of March, 1869, to the 2d January, 1872, as to said Harrell, and to show defendants' possession, under color of title, from the 2d January, 1874, to this date; and the court permitted said deeds to be read in evidence for the purpose last above stated. "

The evidence being closed, and no other evidence being adduced than as above stated, the defendants renewed their objections to the transcript of the judgment in the case of *Hudson v. Yarborough*, and to the memorandum of the sheriff Lawson as to the execution, levy and sale, and to each of the deeds to which they had objected when offered; and they reserved exceptions to the overruling of each of their said objections. In the matter of charges to the jury, also, given and refused, numerous exceptions were reserved by the defendants, which require no special notice, since this court does not pass upon the correctness of each, but only states general principles as a guide for the court below on another trial.

All of the rulings of the court below to which exceptions were reserved, thirty-eight in number, are now assigned as error.

[Baucum & Jenkins v. George.]

J. T. Heflin, for the appellants.

Taul Bradford, contra.

BRICKELL, C. J.—The title of the appellee to the premises in controversy being derived from the sheriff's sale under execution against Yarborough, it was necessary to show that, at the time of the sale, or at some time when the lien of the judgment would attach, Yarborough had such title as was the subject of levy and sale. His possession, accompanied by acts indicating ownership, were admissible evidence for that purpose (*Badger v. Lyon*, 7 Ala. 564); and his declarations, explanatory of the possession, were also admissible; but not declarations narrative of a past transaction, extending beyond an explanation of the possession. It is within this latter class, the declaration of Yarborough, that he *had bought the land*, is supposed to fall. The line between the two classes of declarations is not always distinct; but we are of the opinion this declaration was explanatory of the possession, showing that it was under claim of title, and not merely permissive, or in subordination to the title of another. *Nelson v. Iverson*, 17 Ala. 216; *Garey v. Terrell*, 9 Ala. 206; *McBride v. Thompson*, 8 Ala. 654; *Perry v. Graham*, 18 Ala. 822.

The record offered in evidence certainly discloses an existing judgment against Yarborough, in favor of Hudson, but partially satisfied, which the Circuit Court had jurisdiction to render; and to its admissibility we are unable to discover any substantial objection. To support the sale of the sheriff, it was necessary to show a judgment against Yarborough, and an execution issuing thereon.—*Lewis v. Gorgnette*, 3 Stew. & Port. 184. When a record, or an office paper, is lost or destroyed, if its former existence is satisfactorily shown, secondary evidence of its contents will be received. Sometimes, existence and contents may be presumed, if the record is *ancient*; but, in all cases, it is, like other documents, the subject of secondary evidence, of the highest grade the party can introduce.—1 Greenl. Ev. § 509. More than twenty-four years had elapsed after the issue of the execution against Yarborough, the sale by the sheriff, the execution and registration of the deed, reciting the execution, the levy, and sale. These are facts having a strong tendency to show the existence of the execution; and when the paper is not found in the office of the clerk, its proper place of deposit, a less degree of corroboratory evidence of existence and contents is necessary, than if the transaction was more recent.

The memoranda of the execution, its levy, and the sale

under it, were made by Lawson in the course of official duty;
are a mere register of facts contemporaneously occurring,
which he had no interest to misrepresent; and being iden-
tified, were properly received as evidence.—1 Greenl. Ev.
§ 115; 1 Whart. Ev. § 238.   Lawson was not incompetent to
make the levy and sale under the execution, by reason of his
relationship to the assignee of the plaintiff, Hudson.   The
statute then of force limited the incompetency of a sheriff, to
cases in which he was a party in interest.—Clay's Dig. 159,
§ 2.   No one of the objections to the memoranda, or to the
evidence of Lawson, was well taken.

A plaintiff in ejectment, or in the corresponding statutory
real action, must recover upon the strength of his own title—
he must show in himself a present right of entry and posses-
sion, without regard to the character of the defendant's
possession.   When he relies upon a conveyance from another,
there must be evidence that, at the time of the conveyance,
there resided in the grantor a legal title to the lands.   The
lands in controversy, described according to the government
survey, were by the sheriff conveyed to Douglass, and, with
the exception of three acres, by Douglass to Hill.   There was
evidence having a tendency to show that Yarborough, the
defendant in execution, had, at and prior to the sheriff's sale,
a legal title to the lands, subject to levy and sale.   His prior
possession, and acts of ownership, were evidence of such
title, for the consideration of the jury, dependent for its
sufficiency upon the strength and character of opposing ev-
idence.   This title passed to Douglass, by the conveyance
from the sheriff, and passed by his conveyance to Hill.   The
conveyance from Hill to Lea was, therefore, properly ad-
mitted as a link in the chain of George's title, if it conveys
the lands in controversy.   The only description of the prem-
ises granted, found in it, is "the Douglass Gold Mine, in
Talladega county, Alabama;" and it was proposed, by parol
evidence, to identify the lands in controversy, as known by
that designation.   Ambiguous descriptions of lands in con-
veyances are open to explanation by parol.   The familiar
illustration given in the books is, when an estate is granted
by the designation of Black-acre, parol evidence is received to
identify the premises known by that name.—2 Whart. Ev.
§§ 942-3; Clements v. Pearce, 63 Ala. 284.

The deeds from Curry to George, and from Wilson to him,
not having been recorded within twelve months after execu-
tion, were not self-proving under the statute (Code of 1876,
§ 2194); and without proof of execution, ought not to have
been received in evidence.—Sharpe v. Orme, 61 Ala. 263.
The single objection to the admissibility of the deed from

Harrell to Wilson (and we can consider no other), was the want of proof of execution. It was executed, acknowledged and recorded, in 1843, in conformity to the statute then of force, by the terms of which it was self-proving.—Clay's Dig. 151, § 1.

Notoriety was admissible to identify the lands in controversy, as known by the designation of "*Douglass Gold Mine*." The evidence of the witness Thomasson, as to the declaration of Morgan, was not of that character—it was merely narrative of the manner in which Hill obtained title, irresponsive to the question propounded, and ought to have been excluded. The declaration made by Hill to Harrell, before the conveyance to Lea, though it has in it no element of estoppel, was in disparagement of his title, and the court erred in excluding it. The declarations of a vendor, in disparagement of his title, are admissible against a subsequent vendee.— 1 Brick. Dig. 534, § 433. The deeds from Bellamy to Harrell, and from Harrell to Baucum and Jenkins, were inadmissible, for any other purpose than to show *color of title*, an ingredient of adverse possession.—*Willingham v. Brown*, 38 Ala. 311. The declaration of Harrell, made at the tax sale, that he was purchasing as the agent of Hill, was self-disowning, and admissible as against his subsequent vendee.

There was no room for the introduction of evidence of Harrell's character for truth and veracity, and the court properly refused to complicate the case with that inquiry.

We do not deem it necessary to review the several exceptions to charges given and refused. They present no question of difficulty or importance, and are covered by repeated decisions of this court. If the fact is, that Harrell entered into possession as the agent of Hill, the possession, whether held by him or his tenants, could not become adverse as to Hill, or those claiming under him, until there was a disclaimer of his title, and the assertion of a hostile title brought home to Hill, or his vendees. Whenever a relation of privity exists, such as that of principal and agent, or of landlord and tenant, by virtue of which possession is originally taken, it can be dissolved, and the possession converted into hostile or adverse to the principal or landlord, only by a clear, positive, and continuous disclaimer and disavowal of his title, and the unequivocal assertion of an adverse right.—*Harrison v. Pool*, 16 Ala. 167 ; *Benje v. Creagh*, 21 Ala. 151 ; *Knight v. Bell*, 22 Ala. 198. It is not necessary that the claim of right or title should be good, or believed to be good. It is enough that there is a real, *bona fide* purpose to assert and rely upon it as hostile or adverse to that of the real owner, and as the right to the possession.—*Herbert v. Hanrick*, 16 Ala. 595–6 ;

*Hinton v. Nelms*, 13 Ala. 222. The possession must be as definite as the character of the land will permit; but occupancy of a part, with color of title, defining the extent of the claim, is deemed to extend to the boundaries expressed. *Ellicott v. Pearl*, 10 Peters, 412. Payment of taxes, connected with an actual possession, is evidence tending to show the extent of the possession.—*Ivy v. Stein*, 49 Ala. 514. We do not extend this opinion, by inquiring whether the rulings of the Circuit Court were in conformity to, or violative of these settled principles; they can be observed on another trial.

For the errors pointed out, the judgment is reversed, and the cause remanded.