# Ross *v.* Goodwin.

*Statutory Action in nature of Ejectment.*

1. *Continuity of adverse possession.*—Continuity is an essential element of an adverse holding, such as can ripen into a title. Different entries, at different times, by different persons, between whom there is no privity, nor connected claim of rightful holding, are but a succession of trespasses, and neither can furnish any support to the other; no can one adverse holder tack together his own several holdings, when he has allowed another person to acquire an intermediate tortious possession before his own had ripened into a title.

2. *Presumptive bar from lapse of twenty years.*—The lapse of twenty years, during which different trespassers have had possession, does not

[Ross v. Goodwin.]

bar the right of action of the true owner, unless there has been such a continuous possession, or continuity of successive possessions, as perfects a title under the statute of limitations.

3. *Certified copy of patent from land-office.*—Under statutory provisions (Code, § 2787), a copy of a patent for lands issued by the United States may be certified by the "acting commissioner" of the General Land Office; and such certified copy is admissible as evidence, without producing or accounting for the absence of the patent itself.

4. *General reputation, or notoriety* —Where the title to land is in issue, a witness can not be asked, "Whose land was it generally known as in the neighborhood?"

APPEAL from the Circuit Court of Cleburne.

Tried before the Hon. LEROY F. BOX.

This action was brought by Thomas J. Goodwin and others, against Thomas Strong, to recover the possession of a tract of land described as the "N. E. quarter of section 18, township 17, range 10;" and was commenced on the 21st July, 1887. Strong disclaimed title in himself, and John Ross, as administrator of the estate of John Goodwin, deceased, was made a party defendant on his own motion, and pleaded (1) not guilty, (2) the statute of limitations of ten years, and (3) the statute of limitations of twenty years; on which several pleas issue was joined. On the trial, as appears from the bill of exceptions, it was admitted that the plaintiffs were the only surviving grandchildren and heirs at law of Thomas J. Goodwin, deceased, who died in Talladega county, in 1844, and who was a brother of John Goodwin, defendant's intestate; and they offered in evidence a copy of a patent for the land, issued to their said ancestor by the United States, dated December 3d, 1842; which copy was certified by "S. M. Stockslager, acting commissioner of the General Land Office." The defendant objected to the admission of said certified copy as evidence, "on the ground that the original patent was not produced, nor its loss, destruction or absence accounted for." It is recited in the bill of exceptions, "There was no showing made to account for the absence of the original, but it was not, and never had been, in the possession or custody of plaintiffs." The court overruled the objection, and the defendant excepted. This was the plaintiffs' title.

The defendant thus testified in his own behalf: "Witness knew the land, and knew John Goodwin in his life-time; that he lived about one mile and a half from the land, and was living there at the time of his death in 1865. Thos. B. Camp acted as the administrator of said John Goodwin's estate, until his death in 1868, or 1869; and witness was ap-

[Ross v. Goodwin.]

pointed administrator *de bonis non* in 1870, or 1871, and took charge of the land in 1872, to the best of his recollection. The first thing witness did was to pay the taxes, and get Mr. Rusk to look after the land, who had been the agent of said Camp for that purpose. Rusk was not then on the land, and never was, so far as witness knows. This transaction with Rusk was at the house of witness, four miles from the land. Witness has been in possession of said land ever since, and Thomas Strong was in possession as his tenant when this suit was commenced. There was a dwelling on the land when witness took charge of it, and fifteen acres were then cleared and fenced. Witness first rented the land to one Dickerd, who made improvements, cultivated the open land, and used the timber on the place in repairing, but did not live on the land; this was in 1872, or 1873, when he was in possession. Witness leased the land for four years, from December 25th, 1877, to W. Campbell, who went into possession under the lease, and remained there four years, made improvements on the dwelling, and cleared up some land, so that there was about twenty-five acres in cultivation when he left; and he returned the possession to witness at the end of his lease. Witness next rented the land to T. J. Strong, who cultivated it the year before the suit was brought, and the year it was brought. Witness rented the land to Riley Smith, for one year, before Strong, and to one Saxton for the year 1885, who made a poor crop. John Goodwin put a man by the name of Thompson in possession of said land before the war, and before Thomas Ables, who was in possession at the time of his death in 1860. Never heard the trade between Thompson and Goodwin. All I know about it, of my own knowledge, is what Goodwin told me. Do not know upon what terms said Ables went into possession. Saw Camp on the land, riding over it, and looking at it. Do not know who, if any one, lived on the land while Camp acted as administrator of said estate. The land was not occupied by any one for some years. The rent of the place was worth probably $15 per year; from $5 to $15 would be reasonable rent for it since I've known the land. Strong paid me the rent while he occupied the land. Witness never cultivated the lands, nor resided on them himself, but lived and farmed four miles away."

*J. H. Ables*, the next witness for defendant, testified: "I have known the land sued for, for fifty years. Thompson lived there several years, to 1855, or 1856, when Mr. Mobley

[Ross v. Goodwin.]

went into possession under John Goodwin, and remained in possession two years. I moved on the land in January, 1858, and made two crops (1858–59); rented the land from John Goodwin, and paid him the rent. Thomas Ables, my father, moved in after I left, and remained in possession until his death in 1860; cultivated the lands, used and occupied the premises, and did not pay rent to any one. He claimed an interest in the land while he was living on it. My mother and her family continued to live there until after the war, in the Fall of 1865. I rented the land to Ship, for the year 1866, for the benefit of my mother, collected the rents, and paid them to her; did not pay them to John Goodwin, or his administrator. Thompson was living on the south-west quarter of the land; he built a house, and cleared about eight acres on the north-east quarter. When I lived there, I got my fire-wood, timber for repairs, and rails from the wood-land part of the tract. My father and John Goodwin, when he lived on the land, were great friends and cronies. Goodwin was illiterate, and my father attended to a great deal of his business for him. Never heard my mother set up any claim or title to said land." The defendant asked said witness this question: "Whose land was the land sued for generally known as in the neighborhood?" The court sustained an objection by plaintiffs to this question, and defendant excepted.

F. M. Campbell, for defendant, testified: "Have known the land since 1847, and was on it frequently when the Ables lived there. There was a double house (dwelling) on the N. E. quarter, and 20 or 25 acres cleared around it, part on the N. E. quarter, and part on the N. W. quarter. Witness' nephew lived on the land four years, following December 25th, 1877; he had twenty acres in cultivation, and repaired the dwelling and the fences. The land was bounded on all sides by the lands of individuals. Saw signs of a good deal of wood cut from the land, but not much on the south half; the west half had been mostly cleared long ago, and turned out. A man by the name of Williams was on the land in 1846-7, and said he was there under John Goodwin."

Wm. Campbell, for defendant, testified, "that he moved on the land in the latter part of the year 1877, and lived there four years consecutively; that he made a contract with the defendant to buy said land, who agreed to make him a warranty deed; that he went into possession under said contract, and occupied the land under it, but they recanted the trade

[Ross v. Goodwin.]

at the end of the year, and he returned the possession to defendant; that he found the improvements somewhat dilapidated, the top of the house off, and the land looked as if it had not been cultivated for several years; that he got timber to repair the houses, to build fences, and for fire-wood, during the four years, from the wood-land part of the tract, and mostly from the N. E. quarter; and that Saxton went into possession of the land next after he left." *J. M. Campbell*, another witness for defendant, testified that, "in 1887, after the crops were laid by, the defendant went with a man to show him the land to sell, and asked witness to go with them to show him a corner; and that the land did not then look as if it had been cultivated in two or three years." *B. Higginbotham*, another witness for defendant, testified, "that he had known the land for many years, and lived in the neighborhood all that time; that it was generally known in the neighborhood that the possession belonged to John Goodwin; that he lived within a mile of the land, and knew John Goodwin well, knew that he lived two or three miles from the land, and never knew him to be in possession of the land; that other persons were in possession of the lands while said Goodwin lived near them, not saying whom, nor how they were in possession; and that he never knew Camp or defendant to be in possession of the land."

"The foregoing being substantially all the evidence before the jury," the court gave the following charges at the instance of the plaintiffs: (1.) "No possession can defeat plaintiffs' title, unless it has continued for ten consecutive years before the suit was brought." (2.) "When the statute of limitations of ten years is relied on in defense of an action to recover lands, the burden of proof is on the defendant to show the extent of the possession, and that the possession was adverse for one continuous period of ten years before the suit was brought." (3.) "If the jury believe that Thomas Ables and his wife were in the notorious, continuous, exclusive, and adverse possession of the land sued for, claiming it as their own, from 1860 to the Fall of 1865; then this time is not to be included as any part of the possession which might bar the plaintiffs' action." (4.) "If the jury believe from the evidence that neither the defendant nor those under whom he holds, were in the possession of the lands for several years prior to December, 1877; then the possession since that time can not be added to any former possession, in order to complete the bar of ten or twenty years

[Ross v. Goodwin.]

adverse possession, so as to defeat plaintiffs' right to recover."
(5.) "Before the jury can find for the defendant, under the
plea of ten years adverse possession, they must believe from
the evidence that the defendant and those under whom he
holds, or either, had been in the adverse possession of the
lands for one continuous period of ten years, prior to July
21st, 1887."

The defendant excepted to each of these charges as given,
and requested the following charge in writing, duly except-
ing to its refusal: "If the jury believe from the evidence
that John Goodwin went into the possession of the land sued
for, by his tenant or tenants, claiming the same as his own,
twenty years or more before the commencement of this suit;
and that neither the plaintiffs nor their ancestor, Thomas
Goodwin, have been in the actual possession of said land,
either by themselves, or some one for them; then plaintiffs
can not recover in this suit, although the evidence may fail
to satisfy the jury that John Goodwin and his administrators
have been in the open, notorious, continuous, and exclusive
possession of said land, for the space of twenty years, or even
ten years."

The charges given, the refusal of the charge asked, and
the rulings on evidence, are assigned as error.

JAS. AIKEN, and G. C. ELLIS, for appellant.—(1.) The
action was barred by the lapse of twenty years or more,
during which neither plaintiffs nor their ancestor had pos-
session of the land.—Code, § 2624; *Long v. Parmer*, 81 Ala.
384; *Solomon v. Solomon*, 81 Ala. 505; *Bozeman v. Boze-
man*, 82 Ala. 389. (2.) The court erred in each of the
charges given. (3.) The testimony of J. H. Ables was
legal, and ought to have been admitted.—*Cleveland W. Mills
v. Sibert, Ward & Co.*, 81 Ala. 140.

KELLY & SMITH, *contra*, cited Code, §§ 2783, 2787;
*Woodstock Iron Co. v. Roberts*, 87 Ala. 436; *Benje v.
Creagh*, 21 Ala. 151; 3 Brick. Digest, 621, § 63.

STONE, C. J.—Continuity is an essential element of an
adverse holding, such as can ripen into a title. Different
entries, at different times, by different persons, between
whom there is no privity of estate, nor connected claim of
rightful holding, are but a succession of trespasses, and
neither can furnish any support to the other.—*Riggs v.*

[Ross v. Goodwin.]

*Fuller*, 54 Ala. 141; *Bell v. Denson*, 56 Ala. 444; *Ladd v. Dubroca*, 61 Ala. 25. Nor can it vary the principle, if the same person perpetrate several, separate tortious takings and holdings, if no one of them is long enough to amount to a bar, provided he permit some other wrongdoer to interlace his holdings with an actual possession in independent right. Such permitted adverse holding breaks his continuity of possession, and prevents it, no matter how adverse its character or assertion, from ripening into a title. The Circuit Court did not err in any of the affirmative charges given.

There is nothing in the contention, that the claim of plaintiffs was barred by the lapse of twenty years. That presumption rests on the theory, that a meritorious claim will not be suffered to lie dormant, or unasserted, for twenty years. To raise it, there must be continued, unchanged *status*, without acknowledgment, express or implied, that a liability or trust exists, or that the apparent is not the real *status*. To raise it, there must have been continuity, the same as is required to perfect the statutory bar. It is not raised until there have been twenty continuous years, during every moment of which time the right could have been asserted, for the destruction of which the presumption is invoked. A hundred disconnected trespasses on the lands of another, by different trespassers, and running through any number of years, if no one of them, of itself, was of sufficient duration to perfect a bar, could not impair the title of the rightful owner.—*McArthur v. Carrie*, 32 Ala. 75; *Fleming v. Gilmer*, 35 Ala. 62; *Austin v. Jordan*, *Ib.* 642; *McCartney v. Bone*, 40 Ala. 533; *Tayloe v. Dugger*, 56 Ala. 444; *Philippi v. Philippi*, 61 Ala. 41; *Solomon v. Solomon*, 76 Ala. 505.

There was no error in the rulings on the admission of testimony.—*Woodstock Iron Co. v. Roberts*, 87 Ala. 436; s. c., 6 So. Rep. 349.

Affirmed.