# Chastang *v.* Chastang.

141    451
144    528

*Statutory Action in the Nature of Ejectment.*

1. *Adverse possession; elements of.*—To constitute adverse possession the possession must be (1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; (5) continuous. If any of these constituents be wanting the possession will not effect a bar to the legal title.

2. *Same; same; evidence as to exact boundaries of land.*—The party claiming to hold adversely must show by some evidence that he is holding the particular piece of land to which he claims title, and there must be evidence showing the exact boundaries of the land claimed by him.

3. *Same; cutting of timber as evidence of claim of ownership.*—A continuous and persistent cutting of timber from a tract of land. will ripen into title by adverse possession, if the cutting is done in such a way as to advertise to the world that the party is occupying the entire tract and is claiming it as his own, but evidence as to indiscriminate cutting of timber, without designating the particular place, how often cut at that particular place, nor how much land was cut over, without evidence of the continuous exercise of the right, will not constitute adverse possession.

4. *General charge; when should be given.*—When from the whole evidence there is an entire absence of any fact which is essential to recovery, the court should, on request in writing, give the general charge in favor of the defendant.

5. *Payment of taxes as evidence of claim of ownership.*—The payment of taxes is not evidence of possession, but, in connection, with evidence of actual possession, is admissible to show claim of ownership and the extent of the possession.

6. *Tax receipt; method of proving.*—The receipt of a tax collector, unless it be an ancient document, is not self-proving and must be proved just as any other receipt.

7. *Payment of taxes; hearsay.*—In an action in the nature of ejectment, a question as to whether the witness had ever heard her father say that he had paid taxes on the land calls for is hearsay testimony.

8. *Insufficiency of constructive possession to establish adverse possesion.*—Where a party holding the legal title to a piece

of land has constructive possession of such land, no subse-
quent constructive possession by another, even under the color
of title, can overlap his possession.

9.  *Possession by holder of legal title; bar to adverse possession.*
If the holder of the legaı .title to a piece of land, enters there-
on, under claim of right, and holds possession, though only
for a day, and even jointly with the other party, it is never-
theless an interruption of continuous adverse possession of
the other party.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. S. ANDERSON.

This was a statutory action in the nature of ejectment
brought by the appellee, Pauline Chastang, against the
appellant, Adele Chastang, and sought to recover a tract
of twenty-four acres of land. The title of the plaintiff
was based on a claim of adverse possession of over
twenty years, by herself and her father, Theodore Col-
lins. The defendant claimed under a complete paper
title from the United States Government, being a pat-
ent issued to her father, Zeno Chastang, on November
15, 1854. The plaintiff introduced evidence showing
that her father entered on the land in question about
forty-five years before the commencement of the suit;
that he built a house thereon and enclosed about four
acres with a rail fence; that as to this four acres his
possession was open - and exclusive, and as to this four
acres the defendant admits plaintiff's title. The evi-
dence for the plaintiff further tended to show that her
father entered on the land, under the United States pat-
ent, built a house on a portion of it, in which he lived
until his death and which has since been occupied by his
family. As to the remainder of the twenty-four acres
in controversy, outside of the Collins enclosure, the evi-
dence is in conflict, though it is shown that both parties
cut fire-wood therefrom, at various times and in various
portions thereof. The witness Pierce Chastang for the
defendant testified that he had lived with his father,
Zeno Chastang, and that his father had cut wood off the
land in controversy as often as he wanted; that he con-
tinued to do so up to his death; and that he, the witness,
cut some of it. The defendant asked, "How often did

he get fire-wood there?" The court sustained plaintiff's objection to this question, to which defendant excepted. The other evidence and facts are sufficiently set out in the opinion.

The court gave the jury the following charge *ex mero motu*: "The possession of the land, if it is under color of title, that is, if possession is taken under a paper purporting to be a deed, describing the land, and the grantee goes into occupancy of a part of the lands described in the deed, and claims the whole tract, such possession would be constructive possession of the whole tract, and if continued for ten years without interruption, would ripen into an indefeasible title. So the possession of Pauline Chastang under that deed from her brothers and sisters, if it began and continued for ten years without interruption, would give her a title by adverse possession. If her possession was interrupted in 1898, that was not ten years from 1890, the date of the deed. If her possession had not been interrupted for a couple of years longer, so as to complete the ten years, she would have acquired title by such possession of a part of the land. This is a good illustration of possession under color of title. If she went into possesion of a part of the land described and claiming the whole tract so described, that would be possession under color of title, but the possession was interrupted by the building of the wire fence in 1898, so that does not conclude this case." Defendant excepted to above charge (assignment of error No. 25). The court thereupon stated to the jury that he did not intend to instruct them as to who was in possession; that that was for them to determine under the evidence, and added, "Where a party comes into possession under a conveyance, although that conveyance may be void, and takes possession of part of the land, claiming it all, that possession is extended to whole of the land so described in the deed, except such part as may be in the adverse possession of somebody else. The court, at the request of the plaintiff, charged the jury as follows: "The court charges the jury that if they believe from the evidence that Zeno Chastang knew Theodore Collins was claim-

[Chastang v. Chastang.]

ing the land, in dispute, and admitted his claim, the acts
of possession thereafter by Zeno on other portions of the
land conveyed by the patent would not be acts of pos-
session of the lands in dispute, even though such land
is embraced in such patent." The defendant excepted
to the giving of the foregoing charge (26th assignment
of error.) The defendant requested the court to give
the following charges, to the refusal of which defendant
excepted: "The court charges the jury that they cannot,
under the evidence in this case, find for the plaintiff as
to any land, which was not included within the rail
fence which surrounded the house of Theodore Collins,
or within the fence, surrounding the garden or field of
the plaintiff, Pauline Chastang." (27th assignment
of error.) "The undisputed evidence in this case shows
that the heirs of Zeno Chastang were, at the time that
the deed to the plaintiff was executed, in the actual pos-
session of a part of the land described in the patent
which covers the land involved in this suit, and the
plaintiff's deed, therefore, did not operate to extend the
plaintiff's actual possession over any of the other lands
of which she was in actual possession." (28th assign-
ment of error.) "The court charges the jury that
neither Theodore Collins nor any of his chilcen could
obtain title to any part of the land in suit without hav-
ing the exclusive, adverse possession thereof for a con-
tinued period of ten years, and in order to establish
such exclusive possession, it must be established reas-
onably to the satisfaction of the jury, that neither Zeno
Chastang nor any of his heirs claiming under him were
permitted to enjoy the possession thereof under their
title even for a single day during the ten years, or even
jointly or in common with the plaintiff's father."
(29th assignment of error.) There were verdict and
judgment for the plaintiff. The defendant appeals and
assigns as error the various rulings of the court, to
which exceptions were reserved.

GREGORY L. & H. T. SMITH, for appellant.—Adverse
possession must be open, notorious, exclusive and con-
tinuous. Any possession is presumed to be subservient

to that of the rightful owner until it is affirmatively shown to have been exclusive of him.—*Kerr v. Nicholas,* 88 Ala. 350; *R. R. Co. v. Philyaw,* 88 Ala. 268; *Alexander v. Savage,* 90 Ala. 383.

A tax receipt stands upon no other or different basis from an ordinary receipt from a private person. A receipt is only admissible against the party from whom it proceeds; as against all other persons, it is hearsay.

The actual possession of a part of a tract under a patent to the whole extends the boundaries of the possesion to the boundaries of the deed. Where two constructive possessions overlap each other, the party who first acquires constructive possession must be regarded as continuing in possession of the whole tract described in his deed until he is actually ousted.—1 Am. & Eng. Ency of Law, § 871; Sedgwick on Trial of Titles to Land, § 752. Unbroken possession must continue ten years to constitute adverse possession.—*R. R. Co. v. Philyaw,* 88 Ala. 268.

No counsel marked as appearing for appellant.

SIMPSON, J.—This was an action, in the nature of an action of ejectment brought by appellee, Pauline Chastang, against appellant, Adele Chastang.

The title of the plaintiff was based on a claim of adverse possession of twenty years, while the defendant derived her title through her ancestor who held a complete paper title from the United States Government, being a patent from the Government to her father, dated November 15, 1854.

There is no pretense that any of the land, except three or four acres, (to which appellant admits adverse possession was established) has ever been enclosed until about five years ago, when the defendant enclosed it, by building a wire fence.

It is proved also that defendant's father, Zeno Chastang, took possession of the tract of land under the United States patent, by building on a portion of it, a house, in which he and his family continued to live, successively up to the time of the commencement of this suit.

The plaintiff proved that her ancestor, Theodore Collins, had a house on the three or four acre tract, which was enclosed by a fence, and that he lived there most of his life, having entered it about forty-five years ago, but, short time before he died he moved away and lived with his daughter, the plaintiff, on another tract of land. But it seems to be proven, by the evidence that, as to the three or four acre tract, the adverse possession was continuous. As to the remainder of the tract, the son of Theodore Collins testified that his father claimed a strip of about twenty-four acres, but he does "not know exactly where the line is," but told him "not to go west of a certain tree," which tree was about thirty-five feet from where the wire fence now is, but the witness does not say in what direction. He states that the land which his father claimed ran north and south, with a branch on the north.

He and other witnesses testify that, at different times Theodore Collins cut fire-wood for his own use and for selling to the steamboats, and rail timber, from the land outside the rail fence.

There is no testimony showing any acts indicating any distinct boundary to the land supposed to have been claimed by Theodore Collins, nor do the witnesses testify definitely as to just where he cut wood, except that most of them say he cut wood outside the rail fence; one says he cut some north and some south of the rail fence, the plaintiff says he cut wood all over it, and one witness says he cut wood "in any old place."

The witness Andre, who is eighty years of age, states that Theodore Collins has been dead twenty-five years; that he lived on the land described in the complaint over twenty-five years; that he was in possession of the land described from the time he moved on it 'till he died. Zeno Chastang (father of defendant) lived on the place west of Collins: witness heard a conversation between Collins and Zeno Chastang, in which Zeno pointed out the line, and told the boys who were cutting timber, "This is the land, that on the west is my land, don't go over there, on the other side is Collins.'" Witness describes this land as being about a quarter of a mile from

the lower corner to the upper corner, nearly square, a little larger north and south than east and west. He states also that Zeno required Collins to move his fence, so that each man should "have his own fence about his own land," and that this was done leaving the alley between them. This was about forty years ago, "before the war."

There seems to be no proof of any acts of ownership by the heirs of Collins, since his death, except that his son-in-law, Juzang, and his sons lived in the house, and did not use the land (outside the enclosure) except to get fire wood, and that a man named Graham occupied it for a while and one of the witnesses got some poles once for Graham to repair the fence; that the witness was stopped from getting rails on said land, about thirty steps south of the Collins rail fence by defendant, she claiming that it was her land.

The defendant's witnesses show that Zeno also claimed the land, that he got wood off it, and that it was the custom of the country to get wood anywhere; that about eighteen or twenty years ago the heirs of Zeno divided the lands of their father's estate, excepting this land; that they were about to divide this also, but Theodore Collins' wife told them she had a deed from their father and, while they denied that she had said deed, they did not divide this land, but waited for her to find the deed.

Nothing seems to have been done, in regard to this land, by either party, so far as the evidence states, since that time, until about five years before the trial of the case (January 29, 1903), when the defendant built a wire fence around the land.

Plaintiff also introduced in evidence a number of tax receipts, running back as far as 1855, but not for every year since that time. Most of them give the value of the real estate but not the amount of taxes paid; a few give the amount of taxes paid and not the value of the real estate. The only one of which indicates anything about the amount of land paid on are receipts for 1851—20 acres; 1855—24 acres, and 1861—24 acres. None of them indicate where the land is.

The defendant requested in writing that the court give the following charge, which request was refused, to-wit: "The court charges the jury that they cannot, under the evidence in this case, find for the plaintiff as to any land which was not included within the rail fence which surrounded the house of Theodore Collins or within the fence surrounding the garden or field of the plaintiff, Pauline Chastang."

All titles in the United States emanate originally from the Government of the United States, and when a party has a patent from the Government, or a direct chain of conveyances from the Government to the present holder, he has what is called a complete title.

Passing over other ways by which he may lose this title, his title or his right to assert it may be lost by adverse possession or prescription in favor of some other party. But when the law places such high dignity upon a regular documentary title, and requires strict formalities to evidence it, it necessarily follows that it requires clear and definite proof of those things which rest in parol. to overcome it.

Hence, the essential elements of adverse possession are, 1st: The possession must be hostile and under claim of right; 2d, It must be actual; 3d, It must be open and notorious; 4th, It must be exclusive, and 5th, It must be continuous. If any of these constituents be wanting the possession will not effect a bar to the legal title.—1 Am. & Eng. Ency. Law, (2d Ed.) 795; *Murray v. Hoyle*, 97 Ala. 588, 593; *Ross v. Goodwin*, 88 Ala. 390; *Eureka Co. et al. v. Norment et al.*, 104 Ala. 625; *Goodson v. Brothers, Admr.*, 111 Ala. 589; *Norment v. Eureka Co.*, 98 Ala. 181.

It seems so evident that it has not been deemed necessary to state it in any case that the party claiming to hold adversely must show by some evidence that he is holding the particular piece of land to which he claims title, and to show that, there must be some evidence showing the exact boundaries of the land claimed by him.

If a man claims title under a deed purporting to convey five acres in the N. E. and six acres in the S. E.

[Chastang v. Chastang.]

quarter of a certain section, the court will say that is too indefinite, because no one can tell where the boundaries of said subdivisions are.

So the courts have always held that if a man claims adversely under a paper color of title, he will be considered to hold, in accordance with the boundaries fixed by the paper, but if he has no paper title then he can hold only that which he has reduced to actual possession, and it would seem that when the courts are allowing the clear muniments of title to be overcome by parol proof of adverse possession, they should at least require the proof to be as clear and definite as to what particular tract of land is claimed to be held, as would be required by conveying it by deed.

Then if witnesses testify that each of them saw a man cutting timber somewhere on a twenty acre tract of land, without designating where each one saw him, nor how often he cut on that particular place, nor how much land he cut over at that point, how could it be said from that testimony that he was indicating that he claimed the entire twenty acre tract of land. Even if one saw him cutting in the N. E. corner, one in the S. E. corner, one in each other corner and one in the middle, that would simply be one act in cutting at each place, and no evidence of continuous exercise of the right of either place.

It is true that there may be such a continuous and persistent cutting of timber or wood from a tract of land, as to be evidence of a claim of ownership, and an advertisement to the world that the party is occupying the entire tract, and if he is doing it in such a way, and under such circumstances as to show to the world that he is claiming it as his right it will ripen into title by adverse possession or prescription. But we hold that, without paper title or some other evidence to define the boundaries of the land claimed, such acts of cutting timber as are detailed by the witnesses in this case are not sufficient to bar the legal title held by the defendant. The only witness who attempts to fix any boundaries, (Andre) while he states that the land he is talking about is the entire twenty (or twenty-four) acre tract, yet when he describes the boundaries as pointed out in the conversation between Collins and Zeno, it was simply a

boundary line at one point, and that point would seem to be at or about the three or four acre tract, which is not included in what we are saying, for he states that Zeno required Collins to move his fence "so that each man would have his own fence about his own land," and that afterwards there was a lane between them. The undisputed evidence is that the three or four acre tract was all that was fenced and that there was a lane or alley between it and Zeno's land.

Evidence of the cutting of timber is admitted as a circumstance, to be taken into consideration, with other evidence in determining the fact and the extent of adverse possession. So, also, the payment of taxes is admissible as a circumstance, but the tax receipts in this case do not aid in pointing out the land claimed.

We hold then that in this case, in addition to the foregoing considerations, there being as much evidence showing such acts of ownership, on the part of the defendant's father, who held the legal title, as there was on the part of plaintiff's ancestor, that the entire evidence in this case was wanting; 1st, in pointing out definitely the land which was claimed to have been adversely held; 2nd, in showing any claim of right; 3rd, in showing such continuous and notorious acts of ownership as the law demands. *Childress v. Calloway,* 76 Ala. 128; *Burks v. Mitchell,* 78 Ala. 61, 64; *Goodson v. Brothers, Admr.* 111 Ala. 589; *Bynum v. Hewlett,* 137 Ala. 333.

When from the whole evidence there is an entire absence of any fact which is essential to recovery it is the duty of the court to give the general charge in favor of the defendant, on request in writing. Hence, the charge requested by the defendant should have been given.

The assignments of error numbered from 2 to 23 inclusive charge that the court erred in permitting the introduction of the tax receipts as evidence.

The general principle of law with regard to receipts is that, while they are, as against the maker, evidence of the payment as stated, yet, as to strangers to the transaction, "a receipt is incompetent evidence of such fact.— 23 Am. & Eng. Ency. Law, (2nd Ed.) p. 981.

[Chastang v. Chastang.]

But an exception has been made in cases where "the person to whom the payment is made is pointed out by law, and such person is required, by law to give a receipt."—23 Am. & Eng. Ency. Law, (2nd Ed.) p. 981. And this principle has been held to apply to tax receipts. *Farris v. Boxell*, 34 Minn. 262, 264; *Johnstone v. Scott*, 11 Mich. 232, 244.

According to our own decisions the payment of taxes is not evidence of possession, but, in connection with evidence of actual possession, is admissible to show claim of ownership and the extent of the possession.—*Jay v. Stein*, 49 Ala. 514, 521.

In this case the proof was made by the testimony of a witness, as to the payment of taxes.—*Baucum & Jenkins v. George*, 65 Ala. 269, (end of opinion) ; *Green v. Jordan*, 83 Ala. 221, 224.

In the case of *Trufant et al v. White & Co.* 99 Ala. 526, 529, 534, the proof of the payment of taxes was made by producing the tax books. It will be observed that, in none of these cases, was any point made as to how the tax receipt was to be proved, or whether it was self-proving.

It is stated in 27 Am. & Eng. Ency. Law, (2nd Ed.) 753, that "like receipts from other public officers, tax receipts prove themselves," but an examination of the authorities referred to does not seem to bear out this remark.

In the case of *McReynolds v. Longenberger*, 57 Pa. 13, the party was claiming under the tax deed, and after introducing the record evidence of assessment, a sale of the lands, offered to prove the contents of tax receipts over thirty years old, which had been burned, and the court admitted the testimony on the ground that they were ancient documents, were unblemished, had been found in the proper custody, etc, see p. 31, 32.

In *Richards v. Hatfield*, 40 Neb. 879, the statute requiring the fact of payment to be entered in a book and a receipt given, and went on to provide that when the receipt should be lost, or destroyed, the entry in the book might be read, and the only question before the court was, whether, in the absence of any entry on the book, any

other evidence of the payment of taxes might be introduced.

The case of *Adams v. Osgood*, 55 Neb. 767, under the same statute, holds that when the fact of the levy or assessment is disputed in the pleading, the tax receipt is not sufficient to establish the fact of levy or assessment. In the case of *Ellen v. Ellen*, 16 S. C. 132, it is not stated how the tax receipts were proved.

The law is unquestionable in regard to receipts generally that they shall be proved, like all other papers introduced in evidence, and, unless there is some statutory provision making the receipt of the tax collector self-proving, we hold that, if it is an ancient document, it may be received under the usual requirements in such cases, and, if it is not, it must be proved just as any other receipt would.

Our statutes have provided for making certain books and official papers self-proving but this is not one of them.

The 23rd assignment of error, is to the sustaining of the objection to the question by defendant to Piere Chastang, "How often did you get firewood there?" The witness and others had testified to the continued use of these lands by his father, and himself, by the same acts which had been testified to as to Collins, and as tending to rebut the idea that similar acts on the part of Collins indicated an adverse holding of the land, it was material to prove that the owner of the legal title was doing the same acts on the same land, and the extent of his acts. The court erred in excluding this testimony.

There was no error in the refusal of the court to permit Adele Chastang to testify that she heard her father say that he had paid taxes on the land, and that it was hearsay.

The charge referred to in the 25th assignment of error, was erroneous. This charge was calculated to confuse the minds of the jury, by stating a hypothetical case, not in accordance with the facts as testified to, and as shown in the latter part of the charge itself. It then assumes that Pauline Chastang had such a possession as would be in law adverse possession. It ignores the ne-

cessity of exclusiveness in the possession, in connection with the proof that the heirs of Zeno Chastang who held the legal title, had already acquired possession of this land, under the U. S. patent, and were continuing to manifest their possession, by acts equally notorious as those of plaintiff. But this charge is not likely to be given again on another trial of the case, so that it is unnecessary to point out further defects.

The charge referred to in the 26th assignment of error is liable to the construction that if Zeno Chastang admitted that Theodore Collins was claiming the land in dispute, then he could not manifest his own continued claim under his legal title by acts of possession, which would be clearly wrong. Or even if "admitted his claim," could mean that Zeno verbally admitted that Collins claim to the land was valid, that could not preclude him from claiming rights under his own legal title, while it might be a circumstance to explain his subsequent acts.

Referring to the 27th and 28th assignments of error, the principles heretofore referred to in our remarks upon the request for the general charge by the defendant, show that these charges should have been given. The evidence is incontestible that Zeno Chastang held the legal title from the Government, and entered under the title, built a house in which he and his family continued to reside. This gave him the constructive possession of the entire tract, and no subsequent constructive possession, even under color of title, could overlap his possession. Nothing short of an actual, open, notorious and exclusive possession by another could interrupt the constructive possession which was attached to the legal title.—1 Am. & Eng. Ency. Law, (2nd Ed.) 869, 870, 871 and notes; Sedgwick & Wait on Trial of Title to Land, (2nd Ed.) § 753; *Burks v. Mitchell*, 78 Ala. 61.

The charge referred to in the 29th assignment of error, asserts a correct principle of law.

While it is true under our decisions that a temporary interruption by a mere trespasser, if speedily redressed, will not interrupt the continuity of the possession, as to him, yet this principle does not apply to the holder of

the legal title entering under a claim of right; and if he make such entry and hold such possession, even jointly with the other party it. is nevertheless an interruption of the continuous adverse possession of the other party. *Doe ex dem. Farmers' Heirs v. Eslava*, 11 Ala. 1029, 1043, 1044; *Ladd v. Dubroca*, 61 Ala. 25; Sedgwick & Wait on Trial of Title to Land, §§ 741, 745; 1 Am. & Eng. Ency. Law, (2nd Ed.) 836 and note; *L. & N. R. R. Co. v. Philyaw*, 88 Ala. 246.

For the errors indicated the judgment of the court is reversed and the cause remanded.

McCLELLAN, C. J., TYSON and ANDERSON, J. J. concurring.