# Montgomery & Eufaula Ry. Co. v. Rutland.

## Ejectment.

(Decided Jan. 18, 1910.  51 South. 831.)

1. *Adverse Possession; Character of Possession; Use of Land.*— The use of a strip of land extending in front of a ginnery for the purpose of rolling cotton on it after being ginned and preparatory to the cotton being hauled a short distance to the railroad is entirely consistent with the theory of a permissive use of the land.

2. *Same; Elements.*—The essential elements of adverse possession are, that it must be hostile and under a claim of right, actual, open and notorious, exclusive and continuous.

3. *Same; Evidence; Jury Question.*—The evidence in this case stated and examined and held insufficient to show the essential elements of an adverse possession, so as to constitute title and insufficient to submit to the jury the question of title by adverse possession.

APPEAL from Bullock Circuit Court.

Heard before Hon. A. A. EVANS.

Ejectment by Montgomery & Eufaula Railway Company, against W. J. Rutland. Judgment for defendant and plaintiff appeals. Reversed and remanded.

G. L. COMER, for appellant. Counsel insists that the evidence of adverse possession was insufficient, upon which to submit to the jury the question of title acquired thereby, and that, therefore, the court erred in refus-

ing plaintiff the affirmative charge.—133 Ala. 411; 137 Ala. 333; 143 Ala. 446; 148 Ala. 247; 153 Ala. 334.

ERNEST L. BLUE, for appellee.—The acts of possession testified to were notice to plaintiff of the adverse claim and holding of the various grantees under their several deeds.—*Goodson v. Brothers,* 111 Ala. 589; *Lucy v. T. & C. R. R. Co.,* 92 Ala. 246; *Eureka Co. v. Norment,* 104 Ala. 625. The court did not commit error in refusing the affirmative charge.—*Anniston C. L. Co. v. Edmondson,* 127 Ala. 464; 5 Mayf. 15.

DOWDELL, C. J.—This is a statutory action of ejectment, brought by the appellant against the appellee. There is but one assignment of error, and that is based on the refusal of the court to give the general affirmative charge, requested in writing by the plaintiff, appellant here. The defendant relied on the defense of adverse possession of 10 years; it not being denied that the plaintiff had the older or superior paper title.

It is not questioned that the burden of showing adverse possession, in all of its essential elements, rested on the defendant, the party setting it up. This doctrine is too well settled to admit of doubt. What is required to constitute adverse possession has been repeatedly stated in the decisions of this court, and in the case of *Chastang v .Chastang,* 141 Ala. 451, 458, 37 South. 799, 801, 109 Am. St. Rep. 45, reaffirming the doctrine, it was said : "The essential elements of adverse possession are : (1) The possession must be hostile and under claim of right; (2) it must be actual; (3) it must be open and notorious; (4) it must be exclusive; and (5) it must be continuous. If any of these constituents be wanting, the possession will not effect a bar to the legal title"— citing a number of decisions. The land sued for was a

[Montgomery & Eufaula Ry Co. v. Rutland.]

vacant, uninclosed lot in the town of Fitzpatrick—that is to say, vacant and uninclosed for many years, and up to the year 1903, when the defendant built a house thereon.

The witness, Moss, one of the grantors in defendant's chain of title, sworn in behalf of the defendant, testified that he had known the lot for 30 years; "that, when he first knew it, it was a vacant strip of land; that in or about the year 1878 there was a gin house and ginnery on or near the southern boundary line of said strip of land, which was run and owned by some of the grantors under whom the defendant claims title, to wit, Simon & Marks; that the front or north sill, upon which said gin house rested, rested on or extended over a few inches of said southern boundary line of said strip of land men- tioned in the Fitzpatrick deed; that the vacant space in front of the said gin house was used by the owners of said gin and the patrons of the same for six or seven years or more during the ginning season for each year, and which ginning season lasted from three to four months each year, in rolling cotton, when ginned, onto it preparatory to hauling said cotton from the gin and carrying it off to the rail- road; that there was a road used by the own- ers of said gin and ginnery and the public generally, and which ran across said strip of land, from the public road to said gin house and ginnery; and that this use of said strip of land continued for a period of eight or ten years after the year 1878." The witness further testified "that he and one Barrett purchased the strip of land in 1894 from the Alabama Cotton Oil Company, who had run such ginnery and had such possession of and used said land, as shown by its deed, which has been intro- duced in evidence, and all of the deeds introduced in evidence embraced the strip of land just south of and ad-

joining the right of way of 50 feet of the railroad." The witness, on his cross-examination, further testified as follows: "That about the year 1886 the gin house and ginnery as described by him was moved away and established on the north side of said railroad, and that said strip of land 50 feet wide on the south side and adjoining the right of way was vacant until about the year 1903, when the defendant in this suit built a storehouse on a part of it; that after 1894 the witness cultivated a portion of said strip of land for one or two years, by planting a patch of Irish potatoes on a part of it, and that he did not use or have possession of it in any other way; that about the year 1894 he built a wire fence around a portion of said strip of land, and that the employes of said railroad tore said fence down and removed it, and notified witness that said strip of land belonged to the railroad."

We have set out the testimony of this witness in full, for the reason that it is the most favorable evidence offered by the defendant in support of his plea of adverse possession. One other witness, introduced by the defendant, testified to his recollection of the gin house and ginnery, and of the witness Moss having cultivated a portion of the strip of land in potatoes one or two years, and so, too, the defendant, sworn in his own behalf, testified as to the ginnery and potato patch; but neither testified to anything more than did the witness Moss, whose testimony we have set out in full. This was all the evidence as to actual occupancy and use of the strip of land in question prior to the year 1903.

There is a total absence of evidence of any asserted claim of ownership of the strip of land by Simon & Marks, who erected and operated the gin house and ginnery. The only use they made of said strip of land, namely, in rolling cotton on it from the gin house pre-

paratory to its being hauled but a short distance to the railroad, was entirely consistent with the theory of a permissive use by the true owner, the railroad company, that was to receive the cotton for transportation; and, in the absence of any asserted claim of ownership (and of any such claim there is no evidence), such use in and of itself affords no reasonable inference of a hostile claim. Moreover, such possession of the strip of ground by the ginnery people continued only from 1878 to 1886 —less than 10 years. The next act of actual possession was by the witness Moss, in 1894, 8 years after the removal of the ginnery, when the said Moss put a wire fence around a portion of said strip; but it was removed by the plaintiff's employes, and the said Moss was notified that the land belonged to the plaintiff. The evidence is silent as to what one or two years, after 1894, the said Moss cultivated a portion of the land in potatoes. So far as the evidence shows, it could as well have been in 1898 and 1899 as at any earlier time.

The evidence, we think, fell far short of proving that continuous actual possession, under a bona fide claim of ownership, for a period sufficient to constitute title by adverse possesion, under a bona fide claim of ownership, for a period sufficient to constitute title by adverse possession. Nor did the evidence, we think, afford any reasonable inference of the existence of such facts as to warrant the submission of the question by the court to the jury. In our opinion, the general charge, as requested by the plaintiff, should have been given, and its refusal was error.

Reversed and remanded.

SIMPSON, McCLELLAN, and MAYFIELD, JJ., concur.