Argued January 29, affirmed March 9, 1920.

## MERCHANT v. MARSHFIELD TRADING CO.

(188 Pac. 174.)

**Deeds—Deed Between Partners Conveying All of Government Lot by Number as Originally Surveyed.**

1. Deed from one partner to another, describing one of the tracts conveyed as "lot 2 in section 26, township 25 south, range 13 west, Willamette meridian. * * Also all the following described tide-land in said county of Coos, State of Oregon, being the tide-lands owned by [the partners]. The tide-lands lying east of and adjoining lot 2, section 26, township 25 south, range 13, W., W. M." —conveyed the whole of lot 2 as originally surveyed and platted by the government, without regard as to whether the lands were uplands or tide-lands, or whether the grantor partner obtained his interest through patent from the government to the remote predecessor of the partners, or through purchase from the state by the partners.

**Deeds—Evidence—Conveyance of Property by Name Known to and Used by Parties Valid.**

2. If parties to a conveyance knew the particular tract by a name which they had adopted for it, the deed to the property by

such names was a good description, and extrinsic evidence may be invoked to show that they had so known and designated the property among themselves, and therefore intended to convey it by the name.

From Coos: GEORGE F. SKIPWORTH, Judge.

Department 2.

This is a suit to quiet title to a large number of lots in E. B. Dean & Company's Addition to the town of Marshfield. These lots were within the exterior boundaries of lot 2 of section 26 of the particular township, as described in the original government surveys and plats. This lot 2 was patented by the government to A. M. Simpson in 1864, and was transferred by mesne conveyances to E. B. Dean and David Wilcox, who, in 1873, conveyed a one-eighth interest in the same to C. H. Merchant, the ancestor of the plaintiffs.

At this time Dean, Wilcox and C. H. Merchant seem to have been partners in the mercantile and lumbering business at Marshfield, although there seems to be no record of any formal articles of copartnership until the year 1889. This partnership of E. B. Dean & Co., including Merchant, continued to November 1, 1892, when it was dissolved by mutual consent, Merchant retiring from the firm.

In 1877, and while the partnership with Merchant was still continuing, the partners seem to have concluded that a large portion of the land included within the exterior boundaries of lot 2, were really tide-lands, belonging to the state, and they made surveys and application to purchase the same from the state.

The accompanying diagram will show the relations of the land purchased from the state to the boundaries of lot 2, as surveyed by the government. The light line corresponds with the line of lot 2, as surveyed by

the government, and the heavy line inside bounds the portion that was purchased by Dean, Wilcox and Merchant from the state.

27 | 26
34   35

The plant of the partnership, including the mills and store, was located either on the land thus purchased from the state, or on other tide-lands lying in front of and immediately adjoining the same.

On October 31, 1892, the day before the dissolution of the partnership, and apparently as part of the same transaction, Merchant executed a deed to E. B. Dean, by which he transferred his interest in about 25 or 30 large tracts of land in the vicinity of the then plant at Marshfield, which deed, among the rest, described the following tract:

"Lot 2 in Section 26, Township 25 South, Range 13 West, Willamette Meridian. * * Also all the following described tide-land in said county of Coos, state of Oregon, being the tide-lands owned by E. B. Dean, David Wilcox and Charles H. Merchant. The tide lands lying east of and adjoining Lot 2, Sec. 26, T. 25 S. R. 13 W., W. M."

And then follows a description of other tracts of tide-lands. But the tract, which had been purchased from the state as tide-land within lot 2, was not separately or further described.

It is claimed by the plaintiffs that this deed did not convey the part of lot 2 purchased from the state as tide-land, but only conveyed the upland in said lot. On the other hand, it is claimed by the defendant that by the description of lot 2 in the deed, Merchant conveyed everything within the boundaries of lot 2, as surveyed and platted by the government.

AFFIRMED.

For appellants there was a brief over the names of *Mr. W. T. Slater* and *Messrs. Stoll & Hodge,* with an oral argument by *Mr. Slater.*

For respondent there was a brief over the names of *Mr. John D. Goss, Mr. John C. Kendall* and *Mr. Herbert S. Murphy,* with an oral argument by *Mr. Goss.*

BENNETT, J.—Very able, learned and extended arguments have been presented upon both sides, as to whether these lands in question were actually tide-lands, and as to whether the title of the defendant, if otherwise imperfect, has or has not been rendered complete by adverse possession and the statute of limitations. As we view the case, however, it is not necessary to consider these questions.

1. Assuming, without deciding, that the lands in question were tide-lands and did not pass by the patent from the government to Simpson, and assuming in the same way, that the possession by the defendant had not ripened into an adverse title, we still think it apparent that the deed from Merchant to Dean was in-

tended to and did convey the whole of lot 2, as it was originally surveyed and platted by the government, without regard to whether the lands were uplands or tide-lands, and without regard to whether Merchant obtained his interest through the patent from the government to Simpson or through the purchase from the state by the individual partners.

It is assumed in the learned brief of counsel for the appellants that the term ''lot 2 in section 26'' has a fixed and definite meaning which does not admit of any ambiguity, and which would only include the upland actually conveyed by the patent from the government to Simpson. But we do not think that the description of a government lot marked off by its surveys has such a fixed and definite meaning. It is an arbitrary term, coined by the government to describe and include the particular tract of land designated by its survey.

In this case, if we assume that a portion of the lot was tide-land, the government could not by its patent, and did not, convey all the land described by it in its survey as lot 2, because a part of that land belonged to the state, and the government had no title to convey. Under such circumstances the parties might, by their conveyance of lot 2, intend to follow the implied limitations of their patent, and to convey only that portion of lot 2, which was upland, and which, therefore, had been obtained from the government under the government patent. Or they might, and more probably did, intend to adopt and follow the government survey, and to convey everything owned by the grantor within the limits of the platted survey of that lot. In this case it seems reasonably apparent from the evidence, that the parties in their talk about lot 2, and in their dealings in relation thereto, had adopted the govern-

ment survey as a designation of the entire fifty-one acres covered by that survey, and that they conveyed it with reference to that designation.

The testimony shows that Merchant had frequently designated and referred to these lots and blocks in question in Dean's Second Addition, as a part of lot 2.

Mr. Pheland, who came up as manager for E. B. Dean & Co. in 1893, immediately after C. H. Merchant withdrew from the firm, testified—

That when Merchant showed him around over the property he had transferred to E. B. Dean & Co., "he showed me the lots herein what they called lot 2. There was about two hundred lots that wasn't sold at that time in lot 2 that belonged to Dean & Co.—he had sold his interest in that to Dean & Co. * * Yes, I talked with him about these lots and about their value.

"Q. About these lots—you say he showed you lot 2? By lot 2, you mean government lot 2?

"A. Yes. That is what he *generally called it.* In speaking of it him and Mr. Dean *called it lot 2,* but it was Dean & Company's Second Addition. We are in it now."

All of this is undisputed. And if it is true—and we have no reason to assume that it is not—it follows that both Merchant and Dean were in the habit of designating the whole of the property included in the government survey as "lot 2." This conclusion is strengthened by the terms of the deed from Dean & Wilcox to Merchant of this same property in 1873, in which the land is described as "lot 2 of section 26, *containing* 51 *acres of land."*

That they must have adopted this designation of the entire fifty-one acres is further shown by the clause in the deed from Merchant to Dean, in which, after

mentioning lot 2 in section 26, the deed proceeds: "The tide-lands lying east of and adjoining lot 2 in section 26." Now if they did not mean lot 2 in section 26, as surveyed by the government, but meant only the upland, as claimed by the appellants, this last description of the "tide-lands lying east of and adjoining lot 2," would be practically meaningless, for there are no tide-lands adjoining any part of the *uplands* of lot 2 on the east, except a very small piece adjoining the northeast corner, and the whole tract of tide-lands lying in front of the tide-lands in dispute would not have been conveyed at all, although the body of the plant of the partnership was on tide-lands in front of these particular tide-lands in question here.

2. It is well settled by the authorities that if the parties who were conveying had known a particular tract by a name which they had adopted for that tract, a deed to the property by that name is a good description, and extraneous evidence may be invoked to show the fact that they had so known and designated the property among themselves, and, therefore, that they intended to convey the property in question by that name.

In Wharton on Evidence, Volume 2, Section 943, it is said:

"So again, to take a familiar illustration, if an estate be conveyed by the designation of Black-acre, parol evidence is receivable to show what property is known by that name."

In *Baucum* v. *George,* 65 Ala. 259, 267, the only description of the premises found in the deed was the "Douglas Gold Mine," and it was proposed by parol evidence to identify the lands in controversy as known by that designation. The court admitted the evidence, saying:

"Ambiguous descriptions of land in conveyances are open to explanation by parol. The familiar illustration given in the books is, when an estate is granted by the designation of Black-acre, parol evidence is received to identify the premises known by that name."

In our own court in *Bogard* v. *Barham*, 52 Or. 121 (96 Pac. 673, 132 Am. St. Rep. 676), it is said:

"That is certain which can be made certain. If the land has, as a tract or lot, acquired a name to distinguish it and by which it is known, the same may be conveyed without reference to its boundaries."

So in *St. Dennis* v. *Harras*, 55 Or. 379 (105 Pac. 246, 106 Pac. 789), it is said:

"If the tract or parcel of land has a name to distinguish it, and by which it is known, it may be conveyed by that name without making reference to boundaries."

So in this case, if Dean and Merchant had designated the fifty-one acres covered by the government survey as lot No. 2, and had known it by that name among themselves, and caused it to be described in the deed by that name, the description was sufficient.

Besides this, it seems to us that the conduct of the parties shows that this is the true construction of the deed. The overwhelming weight of the evidence is that after the conveyance to Dean, Merchant never claimed this property, and always treated it as the property of E. B. Dean & Co. Pheland says he never claimed it, but always referred to it as the property of E. B. Dean & Co.

Squire, who was for a number of years bookkeeper for E. B. Dean & Co., testified to the same thing. The sons of Merchant, who are plaintiffs herein, testified that they never heard their father make any claim to the property, and the only evidence to the contrary was the testimony of one Ayer, that Merchant made

some sort of a claim upon the land in connection with permitting Ayer to have a boat-landing upon the premises.

When Merchant was receiver for E. B. Dean & Co. he deeded a number of the lots, which were part of the land purchased from the state, to different parties as receiver of that company, and apparently never claimed any interest whatever in the receipts.

The circumstances are overwhelming in their weight, and it seems to us the decree of the lower court should be affirmed.                                    AFFIRMED.

McBRIDE, C. J., and BEAN and JOHNS, JJ., concur.